4-99-0378

NO. 4-99-0378

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v.      ) Macon County

MARLON J. PEARSON, ) No. 98CF1496

Defendant-Appellant. ) 

                      ) Honorable

) Timothy J. Steadman,

) Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial in January 1999, the trial court convicted defendant, Marlon Pearson, of armed robbery and armed violence.  In March 1999, the trial court sentenced him to concurrent prison terms of 48 years and 20 years, respectively.  He appeals, contending (1) the State failed to prove him guilty beyond a reasonable doubt because the victims' identifications of him were contradicted by other evidence, (2) the trial court abused its discretion at sentencing by considering the age of the victim as an aggravating factor when age was an element inherent in the armed violence charge against him, and (3) the 48-year sentence was excessive because he was only 20 years old and had the potential to be rehabilitated.  

Defendant also challenges the imposition of a 48-year extended-term sentence (730 ILCS 5/5-8-2(a)(2) (West 1996)) for his conviction of the armed robbery of Gerald Gersmehl based on the trial court's finding the victim was over 60 years of age.  730 ILCS 5/5-5-3.2(b)(4)(ii) (West Supp. 1997).  Defendant argues his extended-term sentence must be reduced to a term within the regular sentencing range because section 5-5-3.2(b)(4)(ii) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(b)(4)(ii) (West Supp. 1997)) violates the fifth amendment's due process clause (U.S. Const., amend. V) and the sixth amendment's notice and jury trial guarantees (U.S. Const., amend. VI) according to 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and 
Jones v. United States
, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999).  We affirm.  

Gerald and Nina Gersmehl, the victims, both testified at trial.  At the time of the incident in question, Gerald was 80 years old and Nina was 81.  On October 1, 1998, at about 9 a.m., they were standing next to each other in the garage at their residence in Decatur when a man, whom they both identified in court as defendant, approached them and walked through the open door of the garage.  When he was only two to four feet from them he produced a black, small-caliber revolver and demanded their money.  There were no cars in the garage to obstruct their view of defendant.  After Gerald handed defendant his wallet, defendant stepped close to Nina where he placed his hand on her shoulder and, cocking the hammer on the revolver, held the barrel only 3 to 12 inches from her head.  He then ordered her to go inside the house and get her purse.

Nina did not move even though defendant threatened to kill her several times.  Nina instead asked defendant to take the money from Gerald's wallet and return it to him.  Defendant responded by calling Nina a "bitch" and shoved her into the wall of the garage.  Nina was propelled about eight feet.  She hit the wall and fell to the floor, where she ended up on her hands and knees.  Defendant then left the garage.  Gerald saw him turn and walk away at a fast pace down the street.

At the time of the robbery, Gerald was wearing his corrective glasses but Nina was not wearing her bifocals.  Both Gerald and Nina stated the robbery occurred quickly and they managed to stay calm.  

Gerald ran into the house without stopping to help Nina and called 9-1-1.  The police arrived in only a few minutes, while Gerald was still on the phone.  

Both Gerald and Nina told the police the robber was wearing dark pants and a black- or dark-hooded sweatshirt with a drawstring to secure the hood, which covered his forehead and chin.  They both stated he had no facial hair.  Gerald and Nina identified in court the clothing defendant was wearing when apprehended by the police shortly after the robbery as looking like the clothing the robber wore.  Gerald positively identified the revolver the officers recovered along defendant's path of flight as the gun used by the robber or its "twin."

Police officers escorted Gerald and Nina to a nearby street where other officers had detained defendant after noting he matched the description given of the robber.  Both Gerald and Nina positively identified defendant as the man who had robbed them only 20 minutes before.  

In response to Gerald's call and his description of defendant, officers initially observed a man meeting that description a few blocks from the Gersmehls' home riding a bicycle.  When defendant turned and noticed he was being followed by a squad car, he pedaled faster and reached beneath his clothes and into his pocket.  The officers momentarily lost sight of defendant when he turned on another street.  They caught up with defendant but defendant crossed to the other side of the street and onto the sidewalk.  Eventually, one squad car pulled in front of defendant and he was forced to stop.  They found a $20 bill and four $1 bills in defendant's right front pants pocket.  This was the same amount of money Gerald said was in his wallet.  Nina stated the robber had placed Gerald's wallet in his pocket.

When the officers retraced defendant's path, they found a .22-caliber black revolver lying on the street where defendant had turned out of their sight.  This was the same gun identified by Gerald in court.  Fingerprint analysis matched a print on one of the cartridges in the gun to defendant. 

At approximately 5 p.m. that same day, William Hickman found a wallet containing Gerald's identification card in the grass at the rear of his rental home about a block and a half from the Gersmehls' residence.  There was no money in the billfold section but there was about $100 under a hidden flap.  Gerald testified he placed as much as $140 in a hidden compartment of his billfold.

Upon his arrest, defendant told detectives he was at his grandmother's house at the time of the robbery, and his grandmother and sister were there, too.  However, his grandmother testified she did not see defendant any time on October 1 and had last seen him several weeks earlier. 

The police officers testified defendant had a mustache when he was apprehended.  Nina testified defendant had a mustache at the time of trial and described it as being a "thin" mustache.   Defendant first argues the identification of him as the perpetrator of the offenses was inadequate to prove him guilty beyond a reasonable doubt.  He correctly notes both Gerald and Nina initially described their assailant as clean-shaven but he actually had a mustache as noted by the police officers who apprehended him.  He contends the fact the robbery occurred quickly did not leave the Gersmehls time to see their assailant well.  Further, he notes the fact Nina was not wearing her bifocals at the time and Gerald testified his level of anxiety was increased during the robbery.  He argues these factors contributed to less than ideal circumstances for viewing their assailant. 

The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Minniweather
, 301 Ill. App. 3d 574,

577, 703 N.E.2d 912, 913 (1998).  As for witness identification of the accused, a single witness' identification is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification.  
People v. Slim
, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989).  In assessing the reliability of identification testimony, courts consider (1) the opportunity for the witness to view the perpetrator at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty of the witness at the subsequent identification; and (5) the length of time between the crime and the identification.  
Slim
, 127 Ill. 2d at 307-08, 537 N.E.2d at 319.  Discrepancies and omissions as to facial and other physical features are not fatal but affect the weight to be given the identification testimony.  
Slim
, 127 Ill. 2d at 308, 537 N.E.2d at 319.  A witness is not expected or required to distinguish individual and separate features of a suspect in making an identification.  
Slim
, 127 Ill. 2d at 308-09, 537 N.E.2d at 320.  A witness' positive identification is sufficient even though the witness gives only a general description based on the total impression the accused's appearance made.  
Slim
, 127 Ill. 2d at    309, 537 N.E.2d at 320.          

In this case, both Gerald and Nina faced the accused at 9 a.m. in their garage from only two to four feet away.  Although the robbery took place quickly, both of them remained calm throughout.  Nina never testified or implied she had trouble seeing the robber as a result of not wearing her bifocals.  They both described the robber's clothing and stated the clothing shown them in court, taken from defendant, looked like that clothing.  They described the robber as wearing a sweatshirt with a hood tied around his head, which revealed the area from his forehead to just below his chin.  Gerald positively identified the revolver linked to defendant as the weapon used in the robbery.  Finally, both Gerald and Nina identified defendant as their assailant within 15 to 20 minutes of the occurrence. 

The fact Gerald and Nina failed to notice defendant had a mustache is not fatal to their positive identification.  As Nina noted in her testimony, defendant had a dark complexion and the mustache she noticed on him in court was "thin."  It might not have been readily noticeable to the untrained observer while it was noticeable to the police officers, presumably trained to make observations helpful in identifications.  The totality of the evidence, coupled with the identification of defendant, indicates ample evidence supported a finding of guilt beyond a reasonable doubt.

Defendant next argues his extended-term sentence for armed robbery must be reduced to a term within the regular sentencing range because section 5-5-3.2(b)(4)(ii) of the Unified Code (730 ILCS 5/5-5-3.2(b)(4)(ii) (West Supp. 1997)) violated the fifth amendment's due process clause (U.S. Const., amend. V) and the sixth amendment's notice and jury trial guarantees (U.S. Const., amend. VI) according to 
Apprendi
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348, and 
Jones
, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215.  We disagree.

Section 5-8-1(a)(3) of the Unified Code provides the sentence for the Class X felony of armed robbery shall not be less than 6 years or more than 30 years.  730 ILCS 5/5-8-1(a)(3) (West 1996).  Section 5-5-3.2(b)(4)(ii), however, provides:

"(b) The following factors may be considered by the court as reasons to impose an extended[-]term sentence under [s]ection 5-8-2 upon any offender:

* * *

(4) When a defendant is convicted of any felony committed against:

***

(ii) a person 60 years of age or older at the time of the offense or such person's property."  730 ILCS 5/5-3.2

(b)(4)(ii) (West 1996).

Section 5-8-2(a)(2) provides:

"(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by [s]ection 5-8-1 *** unless the factors in aggravation set forth in paragraph (b) of [s]ection 5-5-3.2 were found to be present.  Where the judge finds that such factors were present, he may sentence an offender to the following:

***

(2) for a Class X felony, a term shall not be less than 30 years and not more than 60 years."  730 ILCS 5/5-8-2(a)(2) (West 1996).

In 
Apprendi
, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63 (confirming the opinion expressed in 
Jones
, 526 U.S. at 251-52, 143 L. Ed. 2d at 331, 119 S. Ct. at 1228, that, with regard to federal law, the fifth amendment's due process clause and the sixth amendment's notice and jury trial guarantees require that any fact other than prior conviction that increases the maximum for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt).  In reliance thereon, defendant contends that section 5-5-3.2(b)(4)(ii) of the Unified Code is unconstitutional because it allows a trial court to impose a sentence beyond the 6- to 30-year statutory range for armed robbery by finding the existence of certain facts that have not been submitted to a fact finder for proof beyond a reasonable doubt.  

The issue raised by defendant, the failure to seek the fact finder's determination that defendant's victim was 60 years of age or older, was harmless error.  This same approach was recently used by the Seventh Circuit in finding no need to send a case back for resentencing under 
Apprendi
 when it found the failure to submit to a jury a factor used in sentencing to be harmless error beyond a reasonable doubt where there was "overwhelming" evidence of that factor before the trial court.  See 
United States v. Jackson
, 236 F.3d 886, 888 (
7th Cir. 2001).  If this case were sent back to a jury for consideration, the jury could not have found a different age as the undisputed evidence in the record is that the victim of the armed robbery, Gerald Gersmehl, was over 60 years of age.  Further, this was a bench trial and the trial judge is presumed to have applied the law correctly.    

Defendant next contends the trial court erred in sentencing him by using age as an aggravating factor when age was an element inherent in the armed violence charge against him.  Defendant concedes this issue was not preserved for appeal because his trial counsel failed to include it in his motion to reduce sentence but asks this court to consider it as amounting to plain error.

A trial court's decisions regarding sentencing are entitled to great deference and will not be altered on appeal absent an abuse of discretion.  
People v. Perruquet
, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884 (1977).  Generally a factor implicit in a crime may not be used as an aggravating factor when sentencing for that crime.  
People v. Place
, 238 Ill. App. 3d 1035, 1048, 605 N.E.2d 634, 642 (1992).  

Section 5-5-3.2(b)(4)(ii) of the Unified Code permits a court to impose an extended-term sentence when a defendant is convicted of a felony committed against a person 60 years of age or older at the time of the offense.  730 ILCS 5/5-5-3.2(b)(4)(ii) (West 1998). Defendant was eligible for an extended term of up to 60 years.  730 ILCS 5/5-8-2(a)(2) (West 1998).  Defendant was sentenced to an extended term of 48 years for his conviction of armed robbery of Gerald Gersmehl in violation of section 18-2(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2(a) (West 1998)).  Age is not an element of that crime and, thus, Gerald's age could properly be used as an aggravating factor in enhancing defendant's sentence on that charge.

Defendant was also convicted of armed violence against Nina Gersmehl in violation of section 33A-2 of the Code (720 ILCS 5/33A-2 (West 1998)) predicated on committing, while armed with a dangerous weapon, an aggravated battery prohibited by section 12-4(b)(10) of the Code in that "[k]nowingly and without legal justification" he caused "bodily harm to an individual of 60 years of age or older."  720 ILCS 5/12-4(b)(10) (West 1998).  He received a sentence of 20 years to be served concurrently with his sentence for armed robbery.  The sentencing range for this offense was 15 to 30 years.  720 ILCS 5/33A-3; 730 ILCS 5/5-8-1(a)(3) (West 1998).  

At the sentencing hearing, the State presented in aggravation evidence from Paul Fuqua, a 73-year-old resident of Decatur, who testified that on September 17, 1998, defendant came to his house under the pretext of looking at a vehicle Fuqua had for sale.  When he showed defendant to the garage to see the vehicle, defendant produced a dark revolver, which he placed only three inches from Fuqua's stomach, and demanded Fuqua give him his billfold.  Defendant fled on foot to a bicycle and then he rode off on the bike.

The trial court noted this incident took place only two weeks before that involving the Gersmehls and considered defendant's proclivity for victimizing the elderly when it sentenced him for the armed violence charge.  Thus, the court did not take into consideration Nina's age simply for the fact she was a victim over 60 years old, but instead concluded defendant had already demonstrated a pattern of crime from which the public, especially the elderly public, needed to be protected.  

There was no use of a factor in aggravation inherent in the elements of either crime charged, and there was no plain error.  The issue is forfeited for purposes of appeal.

Finally, defendant contends his sentence for armed robbery was excessive.  Defendant argues the trial court failed to take into consideration his youth and potential for rehabilitation.  The record indicates the trial court 
did
 take into account defendant's potential for rehabilitation and noted it was not a pleasant task to sentence someone so young for such a serious offense.  However, the court noted defendant's potential for rehabilitation was outweighed by the need to protect the elderly public from defendant.  He was armed with a fully loaded revolver pointed directly at the victims at close range.  He committed a similar offense only two weeks earlier.  The trial judge deliberately stated he would not consider the State's arguments for imposing consecutive sentences because he wanted to give defendant some hope as well as protect the public.  Discussion at the hearing on the motion to reduce sentence indicated the trial court was aware defendant would only be required to serve half of the 48-year sentence and 85% of the 20-year sentence.

A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense.  
People v. Fern
, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999).  The record shows no abuse of discretion on the part of the trial court.

We affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.