(text box: 1) NO. 5-99-0637

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jackson County.

)

)  No. 98-CF-511

)

ROMELL JOHNSON, )  Honorable

)  David W. Watt, Jr.,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

This is another case where unthinkable criminal acts drew a severe prison sentence, punishment incapable of actual imposition in the absence of a judicial finding that the effort at murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  Once again, we are called upon to examine how the constitutional rule promulgated in 
Apprendi v. New Jersey
 limits the statutory machinery established for the imposition of extended-term punishment under Illinois law.  See 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

The defendant does not appeal from the determination of his guilt. 

In broad daylight, and for no known reason, the defendant donned a ski mask to conceal his identity and savagely assaulted a complete stranger.  To his misfortune, John Potter was the defendant's random prey.  Stunned by the frenetic attack, Potter pleaded with the defendant to relent.  His cries for help drew onlookers whose presence provoked the defendant's withdrawal.  However, Potter was left severely wounded.  He suffered unkind cuts to his face, neck, and chest.  These bloody by-products of repeated thrusts of a butcher knife's blade into vital body parts placed Potter's life in peril.  Fortunately, he survived.

Following a bench trial, Judge Watt felt that the State had met its burden of proof, and he found the defendant guilty of attempted murder.  He also found the defendant guilty on multiple counts of aggravated battery and on a charge of unlawful possession of a weapon by a felon.  

Prior to the imposition of a sentence, Judge Watt announced his belief that the defendant's attempt at murder was accompanied by exceptionally brutal behavior indicative of wanton cruelty.  Based upon this additional finding of fact, the sentencing statute afforded Judge Watt the option of imposing punishment greater than the maximum penalty otherwise available.  Without the finding, the law authorized the imposition of a sentence no harsher than a 30-year prison term.  730 ILCS 5/5-8-1(a)(3) (West 1998).  A 30-year prison sentence was the maximum sentence allowed, based solely upon those facts weighed under a reasonable doubt standard of proof.
(footnote: 1)
 The finding that the defendant's conduct was more egregious than the conduct of most would-be murderers, that his attempt at murder was accompanied by exceptionally brutal behavior indicative of wanton cruelty, was key to opening an extended range of penalties not to exceed a 60-year prison term.  730 ILCS 5/5-8-1(a)(1)(a), (a)(1)(b) (West 1998).  Armed with this greater range of punishment, Judge Watt exercised his sentencing discretion to impose punishment that called for the defendant's confinement in a state penitentiary for 50 years.  The defendant now serves a sentence for attempted murder that is 20 years longer than the maximum sentence being served by anyone punished for a more commonplace effort at taking another's life.

The defendant challenges the constitutionality of his 50-year extended-term prison sentence.  We are asked to examine the statutory sentencing scheme employed in this case, in light of 
Apprendi
, a case in which the United States Supreme Court held a New Jersey hate-crime statute unconstitutional because it commissioned judges to make a factual finding that enhanced their power to punish beyond the maximum penalties prescribed for New Jersey criminal offenses.

We have already addressed this question and have given detailed answers, on more than one occasion.  See 
People v. Nitz,
 319 Ill. App. 3d 949, 747 N.E.2d 38 (2001); 
People v. Rush
, 322 Ill. App. 3d 1014, ___ N.E.2d ___ (2001); 
People v. Reed
, No. 5-98-0777 
(September 7, 2001).  The defendant's claim to constitutional relief finds support in these earlier rulings.

Notwithstanding, we choose to revisit our earlier views.  In a recent case, a panel of colleagues in the First District examined several of our prior rulings and departed from them.  The panel chose to "set forth a different analysis."  
People v. Vida
, 323 Ill. App. 3d 554, 569, 752 N.E.2d 614, 627 (2001).  That analysis charts a new course that arrives at a ruling contrary to opinions handed down across the state.  See, 
e.g.
, 
People v. Beachem
, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000); 
People v. Joyner
, 317 Ill. App. 3d 93, 739 N.E.2d 594 (2000).  It offers a way to preserve our legislature's effort to provide fitting punishment for those criminal offenders who accompany their criminality with exceptionally brutal or heinous behavior indicative of wanton cruelty.  

The decision teaches us that the constitutionally based rule handed down in 
Apprendi
 does not infect the method our legislators devised for the imposition of extended-term punishment.  
Vida
, 323 Ill. App. 3d 554, 752 N.E.2d 614.  It instructs in reasoning essentially as follows.

A sentencing judge's finding that a given crime is accompanied by rare behavior deserving of greater punishment is an appropriate "discretionary finding[] based upon the nature of the offense."  
Vida
, 323 Ill. App. 3d at 572, 752 N.E.2d at 630.  Since judges are permitted to exercise discretion in imposing a sentence within a range prescribed by statute, based on a consideration of factors related both to the offense and to the offender (see 
Apprendi
, 530 U.S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358), the finding required in order to impose an extended-term sentence is not a finding of fact impermissibly removed from the jury's determination of guilt.  It is but a factor that the sentencing judge may weigh in assessing evidence regarding the particular offense in question.  It, along with all other sentencing factors, may be used by a sentencing judge to assist in a sound determination of the kind and extent of punishment to be imposed within those limits already fixed by law.   The sentencing statutes, viewed in their entirety, do not encroach upon the right to have a jury determine those facts that set the limit of punishment to which a defendant is exposed.  The required finding of exceptional brutality companion to a given crime does not increase punishment's range beyond the prescribed statutory maximum penalties already fixed by the legislature.  The extended-term penalties are an integral part of punishing certain crimes, and the maximum extended-term sentences comprise the prescribed statutory maximum sentences for those crimes.  It follows that the required additional finding of fact is not a finding that empowers a sentencing judge to punish beyond those fixed limits already established for crimes accompanied by uniquely brutal or heinous behavior.  The required determination merely unleashes the statutory authority to actually impose the harsher extended-term punishments already fixed by law.    

Based upon this analysis, our colleagues upheld the imposition of a 100-year extended-term prison sentence meted out to David Vida for having committed first-degree murder and having accompanied his criminal acts with exceptionally brutal behavior indicative of wanton cruelty.  
Vida
, 323 Ill. App. 3d at 573, 752 N.E.2d at 630.

We are not convinced that this approach correctly interprets the constitutional imperative established by 
Apprendi
.  The 
Apprendi
 majority was averse to any scheme of punishment that set maximum criminal penalties and then made the actual imposition of those penalties depend upon the existence of additional facts that a judge would decide after the return of a jury verdict on other facts charged in an indictment.  See 
Jones v. United States
, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228-29 (1999) (Stevens, J., concurring); see also 
Jones
, 526 U.S. at 253, 143 L. Ed. 2d at 332
, 119 S. Ct. at 1229 (Scalia, J., concurring) (both concurrences have been expressly endorsed by the 
Apprendi
 majority).  The 
Apprendi
 majority believed that facts necessary to the determination of punishment's maximum measure should be formally charged and entrusted to fellow citizens for decision in accordance with procedural safeguards that accompany the constitutional promise of a trial by jury.  Simply put, the time-honored guarantee to a trial by jury entitles a defendant to have a jury determine those facts that determine the maximum sentence that the law allows.  See 
Nitz
, 319 Ill. App. 3d at 969, 747 N.E.2d at 54 (relying on 
Apprendi
, 530 U.S. at 498-99, 147 L. Ed. 2d at 460, 120 S. Ct. at 2367 (Scalia, J., concurring)).  

The question of whether a crime is accompanied by exceptionally brutal or heinous behavior calls for a determination that a given offender's crime is qualitatively different from the offense charged.  If the constitutional right to a trial by jury guarantees the right to have a jury decide those facts that determine the law's ultimate measure of punishment, an accused's maximum exposure to criminal penalties, a jury committed to determine the facts beyond a reasonable doubt should decide whether exceptionally brutal or heinous behavior indicative of wanton cruelty accompanied a defendant's charged criminal conduct.  

It is axiomatic that a judge can consider the nature of an individual's offense in exercising sentencing discretion.  It is obviously constitutional to do so.  However, it presents an entirely different question when a sentencing law 
requires
 a judge to make an 
additional finding of fact about behavior that accompanies a crime
 and renders it deserving of more punishment.  In such a case, the sentencing law 
alters the nature of the crime charged
.  
Jones
, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215.  A judge can certainly consider the nature of the offense in a determination of just punishment, but first a jury must determine the existence of those facts that comprise the conduct to be punished.  Those facts that comprise the charged criminal conduct are the facts that must determine the authorized amount of punishment that a sentencing judge has in hand.  The facts that make up the charged criminal conduct are the facts that the State must prove to the satisfaction of an accused's fellow citizens charged with the duty to apply a reasonable doubt standard in their decision-making. 

Our reluctance to embrace reasoning that could preserve the sentence imposed in this case is confirmed by a closer examination of the decision in 
Vida
.  

David Vida was convicted of first-degree murder.  Few would quarrel with a finding that Vida accompanied his unjustified taking of human life with exceptionally brutal behavior indicative of wanton cruelty.  In order to dispose of the victim's body and thereby conceal his guilt, Vida sawed his victim's remains into two parts.  After severing the body at the waist, he tried to dispose of it as garbage.  He crammed the head and torso into one garbage bag and the rest of the remains into another.  

Prior to the imposition of a sentence, the judge who presided over Vida's trial made his own independent assessment of what the evidence established.  That assessment was made without a consideration of the State's burden of proof or, for that matter, a standardized measure of any kind.  The jury had already determined, beyond a reasonable doubt, that Vida, without legal justification, took another's life.  The judge followed that determination with a finding that Vida accompanied the acts that constituted murder with exceptionally brutal behavior indicative of wanton cruelty, and he imposed a 100-year extended-term prison sentence.  Without the determination of companion brutality indicative of wanton cruelty, punishment for the crime could not have exceeded a 60-year prison term.  730 ILCS 5/5-8-1(a)(1)(a) (West 1998).

Faced with an 
Apprendi
 challenge to the 100-year extended-term prison sentence, the First District panel expressed its earnest support for the basic premise that underlies the constitutional rule, but it found essential differences between the sentencing schemes scrutinized in 
Apprendi
 and its forerunner, 
Jones
, and the statutory method employed in sentencing Vida to an extended-term sentence. 

"We wholeheartedly agree with the principle adhered to in 
Apprendi
, 
Jones
[,] and their progeny that a defendant should not be charged with and tried for one offense and then sentenced for another.  However, fundamental differences exist between the statutes in 
Apprendi
, 
Jones
[,] and their progeny and the Illinois sentencing scheme for first[-]degree murder.  Such differences remain essential to our analysis."  
Vida
, 323 Ill. App. 3d at 571, 752 N.E.2d at 629.

The sentencing statute at issue in 
Apprendi
 was indeed different in structure from the sentencing statutes at issue here.  Our sentencing statutes establish two tiers of minimum and maximum penalties, each potentially applicable when a criminal law is violated.  The second tier of punishment is reserved for those offenders whose behavior exceeds the prohibited conduct that defines a given offense–offenders who accompany their criminal conduct with exceptionally brutal behavior indicative of wanton cruelty.  The New Jersey hate-crime statute was an entirely separate enactment that allowed for enhanced penalties beyond the maximum sentences legislated for all New Jersey criminal offenses.  The hate-crime statute empowered a judge to double the prescribed statutory maximum for a given offense by finding that the offender was driven by certain forbidden motives.  

It is more difficult to discern a fundamental difference between our sentencing statutes, and their method for the imposition of extended-term sentences, and the scheme that Congress devised for sentencing individuals convicted under the federal carjacking statute.  The statutory machinery at issue in 
Jones
 invited judicial findings that opened the path to a second and third tier of potential maximum penalties after a federal jury found someone guilty of carjacking.  Congress wanted to punish certain out-of-the-ordinary carjackings, those accompanied by physical injury or death to the victim, in a manner that closely resembles the method that our legislature devised to extend penalty ranges for crimes accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

The federal statute's design allowed a jury to determine that the elements of carjacking, the crime charged, were proven beyond a reasonable doubt.  Once a federal jury determined that someone had committed the crime of carjacking, the statute sought to have a federal judge consider the nature of the particular crime and determine whether either of two factors accompanied it.  Congress wanted to remove these two factors from the jury's assessment and entrust a determination of their existence to a federal judge.  Thus, the statute was structured in a way that allowed a judge, rather than a jury, to determine whether serious bodily injury or death resulted from the carjacking.  If the judge determined that either of these two facts accompanied the carjacking, the statute empowered that judge to impose greater punishment.  Congress put significantly increased maximum penalties in place in order to accommodate either additional finding of fact.    

In this regard, the congressional design was closely akin to the design employed by our legislature to raise punishment levels depending upon the existence of a fact assigned to a judge for determination.  Our sentencing provisions establish a range of penalties with a maximum sentence for each class of offense.  Once a jury determines that an individual has committed a given offense, the sentencing statute seeks to have a judge consider the nature of the particular crime and determine whether exceptionally brutal or heinous behavior indicative of wanton cruelty accompanied the offender's criminal acts.  If the sentencing judge determines that a defendant's crime was companion to exceptionally brutal or heinous behavior indicative of wanton cruelty, the statute empowers that judge to exercise sentencing discretion within a greater range of potential punishment.  Our legislature put much higher maximum penalties in place, penalties readily available for use only in the event of such a finding.

Thus, the federal carjacking statute and the statutory method for the imposition of extended-term punishment under Illinois law share several common features.  Both establish tiers of punishment, with potential maximum penalties that far exceed the limits of punishment that can be imposed upon the facts that comprise a jury's guilty verdict.  The maximum penalties are clearly fixed by law, but the actual imposition of those maximum penalties turns upon factual findings removed from the jury's assessment.  The maximum penalty to which a defendant is exposed depends upon judicial findings unconstrained by the safeguards that accompany a jury trial. 

Most judges, including those in 
Vida
, focus their analysis of 
Jones
 on what Justice Souter had to say in writing for the majority.  This is a mistake.

The majority in 
Jones
, seeking to avoid constitutional concerns, construed the federal carjacking statute as having established three distinct offenses, rather than a single crime with a choice of three maximum penalties, two of which turned upon sentencing factors exempt from the requirements of charge and jury verdict.  
Jones
, 526 U.S. at 252, 143 L. Ed. 2d at 331, 119 S. Ct. at 1228.  Although it discussed the constitutional implications of treating serious bodily injury as a sentencing factor rather than a distinct element of a different crime, the majority upheld the statute by taking the narrower approach.  Jones's enhanced sentence was struck down because a federal judge decided a fact that, in effect, altered the nature of the crime charged.  

Two justices in the majority wrote specially in order to set forth their views on the constitutional ramifications of the statute's peculiar methodology.  Because the 
Apprendi
 majority endorses the rule set forth in these two concurring opinions rather than the narrower ruling of the 
Jones
 majority, what the concurring justices had to say overshadows the actual opinion, when considering the case's import to a proper understanding of 
Apprendi
's constitutional reach.    

Justice Stevens, writing for the majority in 
Apprendi
, noted that, with the exception of a prior conviction, "[W]e endorse the statement of 
the rule set forth in the concurring opinions
 in [the 
Jones
] case: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' "  (Emphasis added.)  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363 (quoting 
Jones
, 526 U.S. at 252-53, 143 L. Ed. 2d at 332, 119 S. Ct. at 1228-29 (Stearns, J., concurring)).

It is imperative to consider this rule in light of the federal carjacking statute's 
intended
 method for the imposition of punishment.  The intended methodology is what the rule set forth by the concurring justices actually addressed.  It is not the majority's cure for the ill-conceived design that is important.  It is the design itself, deemed constitutionally infirm by Justice Stevens and Justice Scalia because Congress removed from the jury the assessment of those facts that had to exist before the greater maximum penalties that Congress provided could actually be imposed.  

As previously noted, the federal carjacking statute's intended design for punishing anyone who committed carjacking was different from the design employed by the State of New Jersey to punish crimes motivated by racial hatred.  However, its intended design mirrors the method employed by the State of Illinois to heap greater punishment on those who accompany their criminality with exceptionally brutal or heinous behavior.    

Our northern colleagues did not consider 
Jones
 from the perspective of the concurring opinions but, rather, confined their analysis to the holding and differentiated the case on that basis.  
Vida
, 323 Ill. App. 3d 554, 752 N.E.2d 614. 

The 
Apprendi
 majority could not endorse the rule set forth in the concurring opinions in 
Jones
 and leave untouched those sentencing schemes that establish greater maximum penalties for imposition only in the event of additional factual findings by a judge.  Jones was not punished beyond the prescribed statutory maximum penalty under the federal carjacking statute's intended design.  And it was that intended design, not its cure, that the concurring justices addressed. 

We adhere to our belief that "due process and the right to a trial by jury are constitutional guarantees that various sentencing schemes can offend, depending upon how a legislature unleashes the power to punish for a given offense and whether that power is constrained in the absence of additional factual findings."  
Nitz
, 319 Ill. App. 3d at 966, 747 N.E.2d at 52.  The additional factual findings do not have to increase penalties beyond those already fixed by law and in place for use only in the event of such findings.  Additional required findings of fact, removed from a jury's assessment and assigned to a judge for determination, merely have to key the authority to actually impose the punishment.  It does not matter that more severe sentences are firmly in place, as long as their actual imposition is impossible in the absence of the required findings.   

Here, the Illinois legislature removed from the jury the assessment of a fact essential to the punishment imposed.  A judge, rather than 12 fellow citizens, determined whether exceptionally brutal or heinous behavior indicative of wanton cruelty accompanied the defendant's criminal acts.  The constitutional right to a trial by jury cannot abide a punishment imposed in this manner.  
Nitz
, 319 Ill. App. 3d 949, 747 N.E.2d 38; 
People v. Rush
, 322 Ill. App. 3d 1014, ___ N.E.2d ___ (2001); 
People v. Reed
, No. 5-98-0777 (September 7, 2001). 

There is one other view, integral to the analysis set forth in 
Vida
, with which we take issue.  We can find no meaningful distinction between a finding that racial motivation accompanied the commission of a crime and a finding that exceptionally brutal or heinous behavior indicative of wanton cruelty accompanied criminal acts.    

Vida
 draws such a distinction.  The court notes: 

"We agree that those determinations in 
Apprendi
 and 
Jones
 should have been made by a jury.  However, those factual findings differ from that made by the court in this case.  As our supreme court has noted, the application of an extended-term statute is determined by the 'offense' rather than by the extent or nature of the defendant's participation.  
People v. Palmer
, 148 Ill. 2d 70, 89, 592 N.E.2d 940, 948 (1992)."  
Vida
, 323 Ill. App. 3d at 572, 752 N.E.2d at 629.

Palmer
 examines cases decided before the constitutional rule in 
Apprendi
 was announced.  Those earlier cases applied extended-term sentencing to defendants found guilty on a theory of accountability, holding that the nature of the offense, rather than the role a participant played in the crime, was the controlling factor.  This application provides little, if any, guidance in differentiating between the kind of finding that constitutes an element of a crime and the kind that does not.  However, 
Apprendi
 provides such direction.    

Addressing the "constitutionally novel and elusive distinction between 'elements' and 'sentencing factors,' " Justice Stevens provided the proper analysis to apply in deciding whether the finding of fact removed from a jury assessment constitutes a fact subject to the constitutional requirement of charge and jury verdict.  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  He wrote:

"Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect–does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.

An analysis that conflates the required finding of fact into the charged conduct without inquiry into the required finding's effect is not the kind of analysis that Justice Stevens contemplated.  Moreover, a reading of the statutory language seems to require a finding that goes beyond the general consideration of a crime's basic nature.    

In order to impose extended-term punishment, the legislature required a finding that the crime "was 
accompanied by
 exceptionally brutal or heinous 
behavior
 indicative of wanton cruelty."  (Emphasis added.)  730 ILCS 5/5-8-1(a)(1)(b) (West 1998).  In our view, this language calls for a determination that a defendant did something more than the acts necessary for a determination of guilt.  It seeks a judge's determination that an offender attended the conduct that comprised the offense with other exceptionally brutal or heinous behavior indicative of wanton cruelty.    

Vida accompanied his murder with exceptionally brutal behavior indicative of wanton cruelty.  He mutilated his victim's body.  Similarly, Apprendi accompanied his gunplay with racial purpose.  Whether a legislature calls for the existence of exceptional behavior companion to a crime's commission or an exceptional motive for its commission, the nature of the conduct that the legislature wants to punish has been altered.  In both cases, legislators call for the existence of a fact deemed more egregious than the facts that define the crime charged, the existence of a fact deemed worthy of more punishment.  In both cases, the required finding of that fact's existence exposes the defendant to greater punishment than that authorized by the jury's verdict.   

We think a finding that exceptionally brutal behavior indicative of wanton cruelty accompanied the commission of an attempted murder is as much an added element subject to charge and jury verdict as a finding that racial motivation accompanied prohibited gunplay.  It exposed the defendant to punishment that could not be imposed in its absence.  Therefore, it should have been made by a jury rather than a judge.  The State needed to allege it in the charging instrument and prove its existence beyond a reasonable doubt before anyone was punished for it. 

Accordingly, we modify the defendant's sentence for attempted murder to a 30-year determinate term of imprisonment, the maximum sentence the law allows us to impose on those facts charged and proven beyond a reasonable doubt.

[The following text is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).]

Nonpublishable material removed here.

[The preceding text is nonpublishable under Supreme Court Rule 23.]

Affirmed as modified.

MAAG, P.J., concurs.

JUSTICE WELCH, dissenting:

What distinguishes this case from the cases relied upon by the majority is that this is a bench trial as opposed to a jury trial.  There is no jury at a bench trial–the trial judge is the finder of fact.  In the instant case, the record clearly indicates that the defendant was admonished of the "nature of charges and possible penalties" by the trial court.  Therefore he was well aware of the possibility of being sentenced to an extended term upon a finding of exceptionally brutal and heinous behavior indicative of wanton cruelty.  Furthermore, the defendant voluntarily waived his right to have the charges tried by a jury and elected to have a bench trial.  At a bench trial, we presume that the trial judge applied the law correctly.  
People v. Pearson
, No. 4-99-0378 (September 10, 2001).

For purposes of this case, we must therefore presume the trial court found, 
beyond a reasonable doubt
, that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  Indeed, the court said, "Pursuant to 730 ILCS 5/5-5-3.2(b)(2) [(West 1998)], the [c]ourt finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."  Accordingly, as I do not believe that the 
Apprendi
 safeguards were violated in the instant case (
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)), I must respectfully dissent from the majority's decision to reverse the defendant's extended-term sentence.

                                      NO. 5-99-0637

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jackson County.

)

)  No. 98-CF-511

)

ROMELL JOHNSON, )  Honorable

)  David W. Watt, Jr.,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: October 23, 2001

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Gordon E. Maag, P.J.,

concurs

Honorable Thomas M. Welch, J.,

dissents

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, E. Joyce Randolph, Assistant Defender, Office

for
 of the State Appellate Defender, Fifth Judicial District, Route 15 East, P.O. Box 2430,

Appellant
 Mt. Vernon, IL 62864-0047

___________________________________________________________________________________

Attorneys
 Hon. Michael Wepsiec, State's Attorney, Jackson County Courthouse, Murphysboro,

for
 IL 62966; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Patrick

Appellee
 D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Route

15 East, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________

FOOTNOTES
1:
It is well-settled that we review bench trials with a presumption that a trial judge will apply the law correctly.  The dissent carries this presumption to new ground.  It is willing to presume that Judge Watt, an admittedly experienced and learned judge, would have had the foresight to know that the constitution required him to measure his finding against a reasonable doubt standard of proof, even though the constitutionally based rule announced in 
Apprendi
 did not yet exist.  There are several reasons that we cannot agree with this approach.  

First, it fails to recognize the relevant inquiry.  The constitutional question that we are asked to address arises from the landmark decision in 
Apprendi
.  In that case, the sentencing statute under which Charles Apprendi, Jr., received an enhanced sentence was held unconstitutional.  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  Apprendi did not exercise the right to a trial by jury.  He pleaded guilty.  
Apprendi
, 530 U.S. at 469-70, 147 L. Ed. 2d at 442-43, 120 S. Ct. at 2352.  The question presented in his case was whether New Jersey law afforded him the right to a jury determination of those facts necessary to the imposition of the punishment that he ultimately received.  It does not matter whether Romell Johnson received a jury trial, a bench trial, or no trial at all.  We need to ask whether Illinois law afforded him the right to have a jury determine the fact upon which his enhanced sentence rests.

Second, the dissent presumes that Judge Watt did something that he clearly did not do.  Judge Watt announced that he arrived at his finding pursuant to section 5-5-3.2(b)(2) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(2) (West 1998)), a provision devoid of any requirement that the evidence of brutal behavior companion to the defendant's criminal conduct be measured by a standard of proof.  If he made the finding in the manner described, pursuant to the law as written, it was clearly not a finding made after imposing a reasonable doubt standard of proof upon the State.  

Finally, in following the procedure set forth in section 5-5-3.2(b)(2) and finding that brutal behavior indicative of wanton cruelty accompanied the defendant's crime without consideration of reasonable doubt, Judge Watt was indeed applying the law, as it then existed, in a correct manner.  The finding that enhanced this defendant's sentence was made at a time before the high court raised any concerns about the constitutionality of the sentencing scheme involved.  The defendant was sentenced on August 16, 1999.  
Apprendi
 was handed down on June 26, 2000, almost a year later.  Judge Watt was duty bound to arrive at a proper sentence based upon the law as it existed when punishment was imposed.  Trial judges decide cases upon the law as it exists, not upon predications of how it may develop in the future.  

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 10/23/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.