NOTICE

Decision filed 10/13/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220623-U

NO. 5-22-0623

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

THE PEOPLE OF THE STATE OF ILLINOIS,           )     Appeal from the
                                               )     Circuit Court of
    Plaintiff-Appellee,                        )     Champaign County.
                                               )
v.                                             )     No. 19-CF-1565
                                               )
CHRISTOPHER C. BRADLEY,                         )     Honorable
                                               )     Randall B. Rosenbaum,
    Defendant-Appellant.                       )     Judge, presiding.
_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where the trial court properly allowed defendant to proceed *pro se*, police developed probable cause to search defendant's truck independently from an informant's tip, defense counsel was not ineffective, evidence of defendant's possession of marijuana and drug paraphernalia was part of the continuing narrative of events leading to his arrest, defendant forfeited any error in the introduction of bodycam videos, and his sentence was not an abuse of discretion, and any argument to the contrary would clearly lack merit, we grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 2     Following a jury trial, defendant, Christopher Bradley, was found guilty of possession of cocaine with the intent to distribute. The trial court sentenced him to 12 years' imprisonment. Defendant appeals.

¶ 3     Defendant's appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that reversible error

1

occurred. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion, and this court has provided him with ample opportunity to respond, and he has done so. However, after considering the record on appeal, OSAD's motion supporting brief, and defendant's response, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                BACKGROUND

¶ 5     Prior to trial, defendant complained that his appointed counsel would not file a motion to suppress. Counsel stated that he saw no legal basis for doing so. Six months later, defendant filed a *pro se* suppression motion. When counsel declined to adopt it, defendant expressed a desire to represent himself. After admonishing him in accordance with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the court allowed him to proceed *pro se*.

¶ 6     The court heard defendant's motion to suppress. Urbana officer Jim Kerner testified that, on October 30, 2019, he received information that defendant would be driving a black pickup truck in east Urbana and would have a substantial amount of drugs. Kerner drove to that area and saw defendant driving such a truck. He checked to see if defendant had a valid driver's license or outstanding warrants and learned that defendant's license had expired.

¶ 7     Kerner stopped defendant for driving without a valid license. He admitted that this was the case and also that he did not have insurance. When Kerner returned to his car to write tickets, defendant admitted to another officer, Matthew Quinley, that he had marijuana. Defendant produced a bag of marijuana, as well as a "hitter box." Based on this, Kerner requested a canine sniff from Officer Chad Beasley and his dog, Arco, which resulted in a positive alert. The officers

2

searched defendant's truck and recovered 66.7 grams of suspected cocaine as well as paraphernalia indicative of drug dealing.

¶ 8      Kerner arrested defendant. After being advised of his *Miranda* rights, defendant admitted that he was a lifelong drug user who had been selling cocaine for more than 20 years to supplement his income.

¶ 9      Beasley testified that, as he was explaining the canine sniff process to defendant, he admitted that he had some "weed" in the car. Defendant held up two packages of it. Beasley and Arco conducted the sniff anyway and Arco alerted on the front, passenger side door.

¶ 10     Quinley testified that, following Arco's alert, officers searched the car. They found various items of drug paraphernalia. In a sunglass case tucked into the center console, they found two bags of a substance they believed to be cocaine. The substance was sent to the crime lab, which confirmed that it was cocaine.

¶ 11     On cross-examination, Quinley said that the basis for the stop was defendant driving without a license. When defendant asked why they looked into the status of his license, Quinley explained that the police "had received information" that defendant possessed "a large sum of cocaine." After receiving this information, Quinley and Kerner found defendant "15 to 20 minutes" later.

¶ 12     During argument, defendant stated that he was "not disputing what they have," but maintained that a "confidential source has to be documented." The State responded that the source's information was verified because defendant was driving a black truck in the area where the officers were told he would be.

¶ 13     The court denied the motion to suppress. The court reasoned that, once Kerner learned that defendant's license was expired, he had reasonable grounds to affect a traffic stop. Defendant

3

admitted that he did not have a valid license or insurance. The canine sniff was permissible given that it was not a search and did not extend the duration of the traffic stop beyond what was necessary for Kerner to write tickets for the admitted violations. Defendant's subsequent admission that he had marijuana and paraphernalia, plus Arco's alert, provided probable cause for the officers to search the car—including closed containers such as the sunglass case.

¶ 14 At later hearings, defendant insisted that the informant was a "lie" and he wanted to confirm that the source was "legitimate." The State offered to bring the detective and the source to meet with the judge in chambers. The court eventually met the informant and confirmed on the record that the person was real. Defendant maintained that he should be allowed to "confront his accuser," and was not swayed by the court's response that the informant was not an accuser under the circumstances.

¶ 15 Testimony at trial was consistent with that at the suppression hearing. In closing, defendant told the jury, "Obviously, everything [the prosecutor] said is true." He argued, however, that because the "accuser," the person who provided the information to the police, had not testified, there was reasonable doubt of his guilt. After about 15 minutes of deliberations, the jury found defendant guilty.

¶ 16 Defendant moved for a new trial. Among other issues, he continued to assert that the confidential source was a "lie." The court did not understand why defendant was "fixated" on the source when the police had independently developed probable cause and reiterated that the State was not required to produce the informant as a witness.

¶ 17 Following a hearing, the court sentenced defendant to 12 years' imprisonment. We allowed defendant to file a late notice of appeal.

4

¶ 18                                   ANALYSIS

¶ 19    OSAD suggests seven possible issues but concludes that none has even arguable merit. We agree.

¶ 20    OSAD's first suggested issue is whether the court erred in allowing defendant to proceed *pro se*. The sixth amendment guarantees a criminal defendant both the right to the assistance of counsel as well as the right to proceed without counsel. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996) (citing *Faretta v. California*, 422 U.S. 806, 833-34 (1975)). Accordingly, an accused may waive his constitutional right to counsel as long as the waiver is voluntary, knowing, and intelligent. *Id.* Although a court may consider the decision unwise, a defendant's knowing and intelligent election to represent himself must be honored out of "that respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.) *Id.*

¶ 21    Before accepting a waiver of counsel, the court must admonish a defendant, and assure that he or she understands, the nature of the charge, the minimum and maximum sentences, and that he has the right to counsel, who will be appointed if he or she is indigent. *Id.* (citing Ill. S. Ct. R. 401(a) (eff. July 1, 1984)). The court need only substantially comply with the rule. The court may deny self-representation in certain circumstances, including where "despite the court's efforts to explain the consequences of waiver, the court finds the defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver." *People v. Ward*, 208 Ill. App. 3d 1073, 1084 (1991) (citing 2 W. LaFave and J. Israel, Criminal Procedure § 11.5(d), at 47-48 (1984)).

¶ 22    Here, the court conveyed to defendant the required information before accepting his waiver of counsel. There is no indication in the record that defendant was incapable of making an intelligent decision to represent himself. Thus, there is no viable argument that the trial court erred in permitting defendant to represent himself.

5

¶ 23   OSAD's next proposed issue is whether the trial court erred in denying defendant's motion to suppress. Defendant was arrested following a traffic stop. Stopping a vehicle and detaining its occupants constitutes a "seizure" within the meaning of the fourth amendment. *People v. Timmsen*, 2016 IL 118181, ¶ 9. Such a seizure is analyzed pursuant to *Terry v. Ohio*, 392 U.S. 1, 19 (1968). Under *Terry*, an officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed or is about to commit a crime. *Timmsen*, 2016 IL 118181, ¶ 9 (citing *Terry*, 392 U.S. at 22).

¶ 24   Defendant's motion to suppress argued that the police targeted him on the basis of an anonymous tip. According to defendant, the tip itself contained no indicia of reliability and the police did not corroborate the tip beyond the innocuous details that defendant was driving a black truck in east Urbana. Thus, defendant argued, the police lacked a reasonable suspicion to stop his vehicle. See *People v. Lockhart*, 311 Ill. App. 3d 358, 362 (2000) (officer may act on information provided by a third party in making a *Terry* stop, but only if the information provided is reliable and allows the officer to reasonably infer that a person was involved in criminal activity). Here, however, the police had developed a reasonable suspicion that defendant was committing an offense quite apart from the informant's tip.

¶ 25   An officer may stop a vehicle if he has a reasonable suspicion that the vehicle has committed a traffic violation. *Timmsen*, 2016 IL 118181, ¶ 9. The officer's subjective motivation for the stop is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). Police may conduct a computer check of a license plate without first observing a traffic violation. *People v. Blankenship*, 353 Ill. App. 3d 322, 324 (2004). If, in doing so, they learn that the vehicle's owner's license is suspended, this provides a reasonable suspicion to stop the vehicle. *Village of Lake in*

6

*the Hills v. Lloyd*, 227 Ill. App. 3d 351, 353 (1992) (citing *People v. Barnes*, 152 Ill. App. 3d 1004 (1987)).

¶ 26 Kerner testified at the suppression hearing that he used his onboard computer to check the status of defendant's driver's license and learned that it had expired. Kerner, who apparently knew defendant by sight, saw him get into his truck and drive. At that point, Kerner had at least a reasonable suspicion that defendant was committing the offense of driving without a valid driver's license. Thus, the traffic stop was justified regardless of any information received from the tipster. The trial court correctly held that the tipster essentially dropped out of the equation at that point.

¶ 27 Defendant also contended, though, that once the police made the stop, based on the informant's tip that he was transporting drugs, they quickly converted the stop into a search for drugs by bringing in a drug-sniffing dog. Defendant cited *People v. Lomas*, 349 Ill. App. 3d 462 (2004), for the proposition that the police could not alter the nature of the encounter based on a subjective desire to search for drugs.

¶ 28 A free-air sniff conducted during a lawful traffic stop does not violate the fourth amendment, as long as it is done within the time reasonably required to complete the traffic stop's initial purpose. *People v. Pulido*, 2017 IL App (3d) 150215, ¶ 41. A positive alert then provides probable cause to search the vehicle. *Id.* ¶ 43.

¶ 29 Here, the court found that the canine sniff did not prolong the stop. The video shows that Beasley and Arco arrived within two minutes. Almost immediately, as Beasley was explaining the procedure, defendant volunteered that he had marijuana and paraphernalia. This, along with Arco's subsequent alert, gave the officers probable cause to search defendant's car, including closed containers such as the sunglass case. See *People v. Smith*, 95 Ill. 2d 412, 418 (1983) (officer who lawfully stops a vehicle and who has probable cause to believe that the vehicle is carrying

7

contraband may lawfully search the vehicle and any closed containers therein that might reasonably contain the object of the search).

¶ 30    *Lomas*, on which defendant relied, is no longer good law.  In *Lomas*, relying on *People v. Gonzalez*, 204 Ill. 2d 220 (2003), we held that the officers' actions in searching for and questioning the defendant about drugs were not reasonably related to the circumstances that justified the stop in the first place.  *Lomas*, 349 Ill. App. 3d at 469.  However, in *People v. Harris*, 228 Ill. 2d 222, 244-45 (2008), the court expressly overruled *Gonzalez* and held that the reasonableness of a traffic stop is to be judged solely by its duration, not by any additional criteria such as whether the officers' actions altered the stop's fundamental purpose.  As the canine stiff did not unreasonably prolong the stop, it does not matter that it may have altered its ostensible purpose.

¶ 31    To summarize, Kerner permissibly used his computer to check the status of defendant's driver's license.  After he learned that it was expired and saw defendant driving, he had a valid basis to stop defendant's truck.  The canine sniff did not impermissibly prolong the stop. Defendant almost immediately volunteered that he had marijuana and the dog subsequently alerted.  These facts gave the police probable cause to search the car.  In doing so, they found the cocaine which was the basis of the charge against defendant.  Moreover, because the officers' subjective intentions are irrelevant, it does not matter that they initially targeted defendant based solely on the informant's tip about drugs.  They developed probable cause independently of the tip.

¶ 32    OSAD's next proposed issue is whether original defense counsel was ineffective for failing to file a motion to suppress.  " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that

8

the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).

¶ 33    Defendant cannot establish prejudice.  After discharging counsel, he was able to present the motion himself.  Moreover, we have held that the court properly denied it.  Thus, original trial counsel could not be ineffective for failing to file such a motion of his own accord.  See *People v. Lewis*, 88 Ill. 2d 129, 156 (1981) (counsel is not required to file futile motions in order to provide effective representation).

¶ 34    OSAD next concludes that there is no reasonably meritorious argument that the trial court erred by allowing the State to present evidence of unrelated offenses, including defendant's possession of marijuana and associated paraphernalia.  Evidence of other crimes is not admissible merely to show a defendant's propensity to commit crimes. *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980).   However, when evidence of another crime is relevant, that evidence may be introduced for any purpose other than to show the defendant's propensity to commit criminal acts. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991).  Other-crimes evidence is admissible when relevant to establish *modus operandi*, intent, identity, motive, or absence of mistake. *Id.* at 364-65. Moreover, evidence of other crimes is admissible when it is "part of a continuing narrative of the event giving rise to the offense" (internal quotation marks omitted), is intertwined with the charged event, or explains a part of the crime that would otherwise be implausible. *People v. Sanders*, 2012 IL App (1st) 102933-U, ¶ 16 (evidence of another crime may be admitted when, *inter alia*, the other crime sets the stage for the charged offense (citing *People v. Hale*, 2012 IL App (1st) 103537, ¶ 14)).

¶ 35    Indeed, where such evidence is part of the course of conduct or a continuing narrative of the charged offense, it is not really other-crimes evidence at all but is evidence tending to prove

the crime with which the defendant is charged. Thus, ordinary principles of relevancy apply and the rules applicable to other-crimes evidence are not implicated. *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 50.

¶ 36 Here, evidence that defendant possessed marijuana was part of the continuing narrative of the charged offense, both explaining why the police searched defendant's vehicle and providing probable cause for them to do so. Thus, there was no error in admitting it.

¶ 37 OSAD's next proposed issue is whether the trial court erred in admitting bodycam video at trial. In his motion for a new trial, defendant alleged multiple violations of the statute relating to body camera recordings and argued that, during the trial, some of the disks "would not play." However, defendant did not object to the body camera videos at trial, thus forfeiting any such issues. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection *and* a written posttrial motion raising the issue are required to preserve alleged errors for appeal).

¶ 38 An exception exists in the case of plain errors. The plain-error doctrine allows a reviewing court to reach a forfeited error where the evidence is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, and where the error is so serious that the defendant was denied a substantial right. *People v. Herron*, 215 Ill. 2d 167, 178 (2005). Here, the evidence was not closely balanced where officers found the cocaine in defendant's truck, and he admitted that it was his and that he intended to sell it. Moreover, the alleged violations, many of which were extremely technical, were not so serious as to deny defendant a substantial right.

¶ 39 OSAD's penultimate issue is whether defendant was proved guilty beyond a reasonable doubt. When a defendant challenges on appeal the sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Hagberg*, 192 Ill. 2d 29, 33-34 (2000). Here, as noted, the cocaine was found inside defendant's truck. A State chemist confirmed that the substance was in fact cocaine. Defendant admitted to being a drug dealer and that he intended to sell the drugs in his possession. Thus, the evidence overwhelmingly proved defendant's guilt.

¶ 40     Finally, OSAD suggests that there is no meritorious argument that defendant's sentence was an abuse of discretion. The trial court is afforded great deference in sentencing. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence within statutory limits is not considered excessive "unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Pearson*, 324 Ill. App. 3d 622, 629 (2001). A defendant's sentence is reviewed for an abuse of discretion. *Stacey*, 193 Ill. 2d at 209.

¶ 41     Defendant was subject to a sentencing range of 6 to 30 years in prison. 720 ILCS 570/401(a)(2)(a) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020). His 12-year sentence was near the low end of the range.

¶ 42     The PSI showed that defendant had a juvenile adjudication for unlawful use of a weapon. He had at least four adult convictions for possession of drugs and paraphernalia. His most recent conviction, in 2011, resulted in a sentence of probation. His probation was revoked, and he was sentenced to the Department of Corrections. Defendant admitted that he had been selling cocaine regularly for at least 20 years. The court considered in mitigation that his most recent conviction came in 2011 and that he maintained a relationship with his son. Under these circumstances, we agree that the 12-year sentence was not an abuse of discretion.

¶ 43     Defendant's response consists largely of personal attacks against appellate counsel. He neither provides supporting evidence nor explains how some relatively innocuous personal

11

information—he alleges that counsel is a "U of I alumni [*sic*]"—negatively impacted counsel's ability to represent him. Thus, we will not discuss them further.

¶ 44    Substantively, defendant reiterates several of the arguments he made in the trial court—and which we have already found to be without merit. He continues to insist that he had the right to learn the identity of the confidential informant. Illinois Supreme Court Rule 412(j)(ii) governs when the State must disclose a confidential informant's identity. The rule provides as follows:

> "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." Ill. S. Ct. R. 412(j)(ii) (eff. Mar. 1, 2001).

¶ 45    A defendant has the burden of showing that disclosure of the informant's identity is necessary to prepare his defense. *People v. Rose*, 342 Ill. App. 3d 203, 205-06 (2003). When an informant is alleged to have participated in, witnessed, or helped to arrange the crime and disclosure will not jeopardize the informant's safety, the privilege will generally give way to a defendant's right to prepare his defense. *Id.* On the other hand, where the informant neither participated in nor witnessed the offense, the informant is not a crucial witness, and his identity may be withheld. *Id.*

¶ 46    Here, as in *Rose*, the informant was a mere tipster. Defendant acknowledges that the tipster did not witness the events leading to his arrest. Thus, the State was not required to disclose his or her identity.

¶ 47    Defendant insists that he was denied his right to "confront his accuser." The right of a defendant to be "confronted with the witnesses against him" (U.S. Const., amend. VI) applies only to witnesses who actually testified at a trial or whose out-of-court statements were admitted at trial.

12

*Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). There is no requirement that every person who provided information to the police during an investigation be called to testify and be subject to cross-examination. Here, the informant did not, of course, testify, nor was an out-of-court statement admitted at trial. The informant was mentioned only to explain why the police initially suspected defendant. We have already rejected defendant's remaining arguments, and his response adds nothing that would cause us to reconsider our conclusion.

¶ 48                                      CONCLUSION

¶ 49    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the trial court's judgment.


¶ 50    Motion granted; judgment affirmed.