THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDWARD WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 61263

Opinion filed December 15, 1977.

James J. Doherty, Public Defender, of Chicago (Gail A. Moreland, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Edward Williams, was charged in a four count indictment with rape, burglary, burglary with intent to commit rape and aggravated

assault. (Ill. Rev. Stat. 1969, ch. 38, pars. 11—1, 19—1, 12—2(a)(1).) Upon defendant's motion for a directed verdict, during the course of the jury trial, the trial judge dismissed the counts of burglary with intent to commit rape and aggravated assault. Defendant was found guilty on the remaining counts of burglary and rape and was sentenced to concurrent terms of one to three years for burglary and five years to five years and one day for rape.

On appeal, defendant contends that he was not granted a fair trial since: (1) the trial judge arbitrarily applied the harshest sanction available under Supreme Court Rule 415(g) (Ill. Rev. Stat. 1971, ch. 110A, par. 415(g)), resulting in the wrongful exclusion of all defense witnesses; (2) the trial judge improperly denied, without a hearing, defendant's motion for substitution of judges; (3) the trial judge incorrectly limited defense counsel's cross-examination of the complaining witness. Additionally, defendant contends the State failed to prove defendant guilty beyond a reasonable doubt.

We agree, in part, with defendant's contentions and therefore reverse and remand this cause for a new trial.

## THE STATE'S CASE

Josephine Purnell testified that at approximately 3 a.m. on October 12, 1970, she was sleeping in her apartment in Chicago, when she was awakened by a ringing of her doorbell, followed by a pounding on her door. She arose from bed to answer the door where she observed defendant, a man she previously knew as a friend of her husband. Defendant was standing on the porch and appeared to be talking to someone. Defendant was saying, "Here she comes now Mama." Purnell assumed that defendant was talking to her mother-in-law whom they referred to as "Mama." Defendant then said, "Open up the door, Mama wants to see you."

Purnell opened the door to discover that defendant was alone. Defendant shoved the door open more fully, entered the apartment hallway and attempted to kiss her, but Purnell pushed him away. Defendant lunged at her throat, and proceeded to choke her and tell her that she had to die and that Purnell's husband who was in the hospital had sent him there to kill her. Purnell testified further that a struggle between her and defendant then ensued in the hallway and lasted for approximately 1½ to 2 hours. During this time defendant punched her, continually choked her and repeatedly threatened to harm her and her three children who were sleeping in the apartment at the time. Defendant then ripped off her housecoat, felt her breasts and pelvic area, and pushed her towards the couch in the living room. Defendant then forced Purnell to have sexual intercourse with him twice.

Purnell related that following the second act of intercourse, she got

dressed and attempted to go to her bedroom, where she kept a gun under her pillow, but was interrupted when her five-year-old daughter came into the living room. Defendant promised to leave if Purnell made him a cup of coffee, so she complied. At approximately 7 a.m. defendant left. Purnell watched defendant walk to the corner and disappear from sight, at which time she went next door where her mother-in-law lived. Purnell was crying as she told her mother-in-law that she had been raped by defendant and wanted to use the telephone. Purnell called the police who arrived 10 minutes later. Purnell then went home to get dressed and the police took her to the hospital where she was administered a pelvic examination and throat X rays.

At approximately 4:30 p.m. Purnell returned from the hospital. As she alighted from a cab to go into her home she observed defendant sitting on her front porch. Defendant said, "Oh my God, what did they do to you." Purnell ran to her mother-in-law's home and told her mother-in-law that defendant was sitting in front of her house. Purnell then called the police.

Purnell subsequently returned to her home and discovered that defendant had left the front porch. She entered her apartment and noticed that her kitchen window was broken and that the gun from under the pillow in her bedroom and a wallet with a small amount of money were missing.

Purnell further declared that since the occurrence, she had noticed that her voice had become deeper, her left eye was higher than her right, and the vision in her left eye was somewhat impaired.

During cross-examination, Purnell stated that she had marital relations with her husband on October 9 and 10, 1970, while he was home on a weekend pass from the hospital. She did not have sexual intercourse with her husband or anyone else on October 11, 1970, the day before the alleged rape.

She further testified that defendant and a woman named Eileen came to her home on October 11, 1970. Purnell also stated that defendant gave her his coat before the first act of intercourse. Purnell admitted that she had access to the back door of her apartment while she was making coffee, but she did not want to leave her young children alone with defendant. Purnell further admitted that the development of a deepness in her voice was her own conclusion, and was not a medical diagnosis.

The trial judge refused to permit defense counsel to cross-examine Purnell regarding the details of a pending criminal indictment against her and a man named Forkenberry. The judge further sustained all the State's objections when defense counsel sought to inquire about the possible presence of a man named Friason at the Purnell home on the day prior to the rape. The judge also refused defense counsel's endeavors to show that Purnell had made other claims of rape in the past.

Essie McDowell, Purnell's mother-in-law, corroborated Purnell's testimony as to the events that took place in the McDowell apartment. While Purnell used her telephone to call the police, McDowell was getting her own children ready for school.

The State also called as witnesses Chicago police officers Dugan, Wiley, McGovern, Farrell and Doran. Officer Dugan testified he responded to the Purnell call at 7:30 a.m. on October 12, 1970, and observed that Purnell had bruises on her face and neck. He took her to the hospital for treatment. Officer Wiley testified that he aided in the investigation of the alleged rape of Purnell. He noticed that Purnell had lacerations and contusions about her throat. She could hardly speak and appeared to be spitting blood.

Officers McGovern and Farrel testified to the effect that at approximately 4 p.m. on October 12, 1970, they responded to Purnell's call and after speaking to Purnell, proceeded to tour the area around 79th and Vincennes. There they observed a man matching the description that Purnell had given. They returned to talk to Purnell and, upon receiving further information, went back to 79th and Vincennes. There they approached the same man, later identified as defendant. As they approached him, defendant pulled out a gun and pointed it at them. The officers disarmed defendant and placed him under arrest.

Officer Doran, a microanalyst for the Chicago Police Department, testified that the results of Purnell's laboratory tests disclosed the presence of sperm.

### DEFENDANT'S CASE

Upon objection by the State, the court ruled that all defense witnesses were excluded from testifying. The basis of the objection and the court's order sustaining it was that the defense, although previously ordered to do so in compliance with discovery procedures, never gave the State its list of witnesses. Ill. Rev. Stat. 1971, ch. 110A, par. 415(g).

Defense counsel made an offer of proof as to what the testimony of Clenter Purnell, Josephine Purnell's husband, would show were he permitted to call the witness on behalf of the defendant:

Clenter Purnell would testify that his wife told him that the struggle with defendant lasted for approximately five minutes and that she had told defendant that the gun was in the basement. Josephine also told Clenter Purnell that defendant was gentle to her and that defendant had a larger penis than her husband. Also, Josephine had made claims of rape to him in the past which he treated as her sexual fantasies. Clenter Purnell also would have stated that he had seen his wife in the company of a man named Robert Friason, and that his young daughter had told him that she previously had seen Josephine and Robert in bed together.

Clenter Purnell would testify further that he had sexual intercourse with his wife on the day before the alleged rape. As a result of having sexual relations with his wife, he had contracted gonnorhea. Clenter Purnell knew defendant to be an epileptic who would have been incapable of struggling with a woman for two hours without going into epileptic seizures.

Eileen Robinson was also called to testify for the defense but was excluded upon the same objection of the State. Defendant's offer of proof as to the testimony of this witness would disclose that Robinson and defendant were romantically involved. They went to the Purnell home during the afternoon of October 11, 1970. At approximately 5 p.m. that day she and defendant left and returned at midnight and were readmitted by Josephine. Robinson and defendant went into the basement and remained there for 3½ hours. During that time Josephine came down to the basement to ask defendant to bring Robert Friason over to the house. Defendant did not do so. Robinson later heard the voices of Josephine and Robert Friason whose voice she recognized. Robinson and defendant had sexual intercourse at 2:45 a.m. and left at approximately 3:30 a.m. When she left, Robinson noticed that Friason was still in the apartment. Robinson also would testify that Josephine had put the gun in the basement. Further, Robinson knew that defendant was an epileptic.

For the reason previously noted, the court also excluded the testimony of Dr. Jonathan Brown, a psychiatrist.

Following closing arguments, the jury returned its verdict of guilty as to rape and burglary. The judge entered judgment on the verdict and sentenced defendant.

Opinion

Defendant contends that the convictions must be reversed and the case remanded for a new trial in order to allow the defense witnesses an opportunity to testify. Defendant maintains that the trial judge's application of the strictest sanction available under 415(g) of our Supreme Court Rules for failure to comply with discovery orders resulted in a denial of his constitutional right to present a defense. We agree.

Supreme Court Rule 415(g) (Ill. Rev. Stat. 1971, ch. 110A, par. 415(g)) provides:

> "(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.
>
> (ii) Wilful violation by counsel of an applicable discovery rule or

an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."

Thus, under section 415(g), the trial judge has a choice of several sanctions to impose against the offending party aside from the absolute exclusion of the evidence. Besides compelling immediate discovery, the court could grant a continuance to effectuate discovery and in the case of a wilful violation by counsel of the discovery order the court could cite counsel for contempt. In the instant case, the trial judge opted for the most extreme sanction available.

The Committee Comments to section 415(g) state:

"Through paragraph (g), the Committee intended to emphasize that these discovery rules must be enforced. Rather than attempt to provide specific sanctions for specific violations, the Committee deemed it wise to leave the sanctions to the discretion of the trial court. This paragraph does contain one provision not present in the A.B.A. Standards. *If justified, under the circumstances, the court may exclude evidence which a party has failed to disclose under applicable discovery rules. The Committee felt that such a device is a useful sanction, and that even though some problems may arise in applying it against the accused, the sanction can be applied in some situations.* In this regard this paragraph conforms to Fed.R. Crim.P. 16(g), and further guarantees the expedition of the discovery process. The sanctions listed are not exclusive." (Emphasis added.) Ill. Ann. Stat., ch. 110A, par. 415(g), Committee Comments, §709 (Smith-Hurd 1976).

We do not believe that the Committee would have contemplated that the facts in this instant situation were of the type that warranted the imposition of this particular sanction. While it is true that defense counsel failed to tender a list of any of its witnesses to the State before trial, there were several mitigating factors present here. Defense counsel explained that he became involved as counsel for defendant one week before the trial with the understanding that the case was to be dismissed by the State due to the difficulty the State had in locating the complaining witness. Therefore, he claimed that he did not know who his witnesses would be. Furthermore, it appears that the State had included Clenter Purnell on its list of witnesses even though it did not call him to testify. Therefore, there would have been no element of surprise to the State in allowing Clenter Purnell to testify as a witness for the defense. Additionally, defense counsel offered to let the State interview all defense witnesses before they testified.

■■■ Even without the presence of these factors, we would still hold that the imposition of the particular sanction in the case at bar was an improper exercise of the trial judge's discretion. The exclusion of all the defense witnesses effectively deprived defendant of an opportunity to

present a defense. Such a result offends our system's fundamental tenets of due process. We doubt that the Committee, in drafting our Supreme Court Rules, intended this particular sanction to be applied where it would result in the complete elimination of an accused's right to present a defense. Rather, the trial judge could have applied a sanction that was not as harsh and would still have promoted the enforcement of our discovery process.

Having determined that this cause must be reversed and remanded for a new trial, we need now address only the defendant's additional contention that the trial judge improperly limited the scope of his cross-examination of Josephine Purnell.

Defendant maintains that he should have been allowed to question Purnell regarding the pending criminal indictment against her and a man named Forkenberry in order to show that she was testifying in this case in exchange for promises of leniency towards her in her own criminal trial.

It is improper to impeach a witness by bringing attention to the fact that a criminal indictment is pending against that witness (*United States v. Dilts* (7th Cir. 1974), 501 F.2d 531) unless it can be shown that a promise of leniency has been made in exchange for the witness' testimony. *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852.

■■ In the instant case, the trial judge allowed defense counsel to establish that Josephine Purnell was a defendant in a separate criminal proceeding. Objections were sustained however, when the defense sought to inquire into the details of the indictment, including the nature of the charge, whether a man named Forkenberry had also been charged, and whether the victims of the other offense were the defendant's own children. We believe the trial judge properly exercised his discretion in prohibiting this line of questioning since the details of the other offense had no bearing on the instant case. The only relevant consideration was whether Purnell had received a promise of leniency from the State, a question which defense counsel never asked.

■■ We also find that the trial judge properly sustained the State's objections when the defense questioned Purnell about her relationships with other men. Specific acts of prior sexual conduct on the part of a rape victim are irrelevant and a general reputation for unchastity may only be shown where the defense is one of consent. *People v. Eilers* (1974), 18 Ill. App. 3d 213, 309 N.E.2d 627.

As noted, because of the view we take of this case, we need not consider the other issues raised by defendant.

For the aforementioned reasons, this cause is reversed and remanded for a new trial.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.