No. 3--01--0892

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2002 

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 10th Judicial Circuit, 

 ) Peoria County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 99--CF--1048

 ) 

CHRISTOPHER J. McAFEE, ) Honorable

                                ) Joe R. Vespa,

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the opinion of the court:

_________________________________________________________________

A jury found the defendant, Christopher J. McAfee, guilty of armed robbery (720 ILCS 5/18--1(a), 18--2(a) (West 1998)).  He was sentenced to 21 years' imprisonment.  On appeal, the defendant argues that (1) the State failed to prove him guilty beyond a reasonable doubt, and (2) the judge erred during sentencing by considering in aggravation that one of the defendant's witnesses may have perjured himself.  We affirm the defendant's conviction, but vacate his sentence and remand for resentencing.

BACKGROUND

Amanda Turner testified that at about 8 p.m. on September 14, 1999, she met Jacob Brown in a parking lot behind the One World Coffee Shop in Peoria.  Turner and Brown stood and talked near Turner's car.  Turner was standing next to her car with the driver's side door open.  She saw two men approach her and Brown.  One of the men, whom Turner later identified as the defendant, positioned himself behind Brown and put a gun to Brown's neck.  She could see the defendant's face as he peered over Brown's shoulder to speak to Turner and the other assailant.  She testified that she was about four feet from Brown when the defendant put the gun on Brown's neck.

The other assailant positioned himself next to Turner and told her to get her purse.  She turned and retrieved her purse from the front passenger seat of the car.  The other assailant took the purse from her.  The defendant then told the other assailant to let Turner get her identification from the purse.  As the other assailant held the purse, Turner took her wallet out, got her driver's license and insurance card, and put the wallet back into the purse.

The other assailant told Turner to get her sweater out of the car, which she did.  The assailant shook the sweater and then threw it back into the car.  The defendant told Brown to give the defendant Brown's money.  Brown reached in his pocket and gave the defendant the money he had in a money clip.

The defendant and the other assailant stepped away from Turner and Brown.  Brown testified that he did not see the man who had the gun on his neck because the man was positioned behind him during the entire incident.  The two men then left the parking lot on foot.

Turner and Brown got into Turner's car and locked the doors while they recovered from their ordeal.  One of their friends walked by the car.  Turner and Brown told the friend that they had just been robbed.  The friend told Turner and Brown that she had seen police officers at a nearby Jimmy John's restaurant.  The friend ran to the restaurant, where she told the officers about the robbery.  The officers accompanied the friend to the parking lot.

Officer Kathryn Handing testified that she interviewed Turner and Brown in the parking lot following the incident.  At first, Turner was "extremely upset" and "barely able to tell [Handing] what happened."  After Turner calmed down, she told the officer that the man with the gun wore a blue hooded sweatshirt, but that the man did not have the hood on his head.  Turner described the defendant as a black male, about six feet, one inch tall, and weighing about 160 pounds.

Turner testified that her purse had contained her checkbook.  On the morning following the robbery, she went to the bank as soon as it opened, closed her checking account, and opened a different account.

Michael Woodcock was the branch manager of the bank where Turner had her checking account.  He testified that on September 15, 1999, he was called to the drive-through teller's window.  The teller advised Woodcock that Aaron Waithe had presented a check drawn on Turner's account payable to Waithe.  Waithe and the defendant had come to the drive-through window in a taxi.  Waithe came inside the bank while the defendant waited in the taxi.  Woodcock called the police, who arrested Waithe and the defendant.

On September 23, 1999, Turner went to the police station to view a photographic line-up.  She identified the photo of the defendant as the man with the gun during the robbery.  On November 4, 1999, she identified the defendant again during an in-person line-up.  The officer who conducted the in-person line-up stated that the defendant described himself as being five feet, nine inches tall, and weighing 148 pounds.

Aaron Waithe testified for the defendant.  Waithe stated that at about 6 or 6:30 a.m. on September 15, 1999, he saw a purse with its contents scattered near a dumpster.  The contents of the purse included Turner's checkbook.  He picked up the checkbook and proceeded to a friend's house on Ellis Street.  On cross-examination, Waithe said that he had known this friend for about a year and a half.  Waithe knew the friend's first name as Steve, but could not remember Steve's last name, the address of Steve's house, or where Steve's house was located on Ellis Street.

Waithe said that he asked Steve to forge a check for $300 payable to Waithe from Turner's checkbook.  In exchange, Waithe would give Steve $50 after cashing the check.  Waithe stated that he then walked to the defendant's house, where he slept during part of the day.  When Waithe awoke in the afternoon, he asked the defendant to go with him to the bank.  Waithe testified that the defendant did not know about the check until they arrived at the bank.

The defendant testified to a version of events substantially similar to Waithe's version.  Additionally, he stated that he was at home during the evening that the robbery occurred.

The jury found the defendant guilty of armed robbery.  The cause proceeded to sentencing.  Prior to imposing sentence the judge stated the following:

"That Waithe character that you caused to be put on the stand was a patent liar.

* * *

I'm also taking into consideration that you're offering this Waithe character to me or to the trier of fact, the jurors, to consider."

The judge then stated that no statutory mitigating factors applied.  He said that the aggravating factors were the threat of serious harm caused by the defendant's conduct, the defendant's significant history of prior criminal activity, and the necessity to deter others from committing the same crime.  The judge sentenced the defendant to 21 years' imprisonment.

The defendant filed a 
pro
 
se
 motion to reduce sentence, which was later supplemented by appointed counsel.  In the supplemented motion, the defendant argued that it was improper for the trial court to consider "Waithe's alleged perjured testimony in aggravation."  At the hearing, the judge stated, "This sentence, I felt, was appropriate and it still is appropriate in spite of the fact, or even considering the factors [the defendant] raises."  The court denied the defendant's motion and the defendant appealed.

ANALYSIS

I. Reasonable Doubt

The defendant argues that the State failed to prove him guilty of armed robbery beyond a reasonable doubt.  Specifically, the defendant submits that Turner's identification of the defendant was unreliable because her description of the height and weight of the defendant did not match his stated height and weight.

A person commits armed robbery when he takes property from the person of another by the use of force and is armed with a firearm.  720 ILCS 5/18--1(a), 18--2(a) (West 1998).  When considering the sufficiency of the evidence to support a criminal conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found proof of the elements of the crime beyond a reasonable doubt.  
People v. Chavez
, 327 Ill. App. 3d 18, 762 N.E.2d 553 
(2001).

In evaluating witness identification testimony, the trier of fact should consider (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the time of identification; and (5) the length of time between the crime and the identification.  
People v. Gonzalez
, 326 Ill. App. 3d 629, 761 N.E.2d 198 
(2001).  A single witness' identification of the defendant is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification.  Discrepancies concerning physical features are not fatal but affect the weight to be given the identification testimony.  
People v. Pearson
, 324 Ill. App. 3d 622, 756 N.E.2d 438 
(2001).

In the instant case, the conviction was supported by the following facts: (1) Turner had the opportunity to view the defendant as he walked toward her, as he looked over Brown's shoulder from a distance of about four feet, and as he walked away; (2) Turner paid close attention to the defendant after he placed a gun on Brown's neck; (3) she described the defendant reasonably accurately to the police; (4) she positively identified the defendant at both a photo line-up and an in-person line-up; and (5) the time between the robbery and Turner's line-up identifications was not unreasonable.  The discrepancy between her estimate of the defendant's height and weight and his stated height and weight was not fatal.  This testimony only went to the weight the jury reasonably could have given her testimony.

The jury rationally could have inferred that the defendant forcibly took property from Turner and Brown while armed with a firearm.  Taking the evidence in the light most favorable to the prosecution, we hold that the State did not fail to prove that the defendant committed armed robbery beyond a reasonable doubt.

II. Sentencing

The defendant contends that the trial judge erred in determining his sentence by considering in aggravation that the defendant presented Waithe as a witness, who may have perjured himself.

We review a sentencing order for abuse of discretion.  
People v. Smith
, 321 Ill. App. 3d 523, 747 N.E.2d 1081 
(2001).  Consideration of an improper factor in aggravation affects a defendant's fundamental right to liberty, and therefore, is an abuse of discretion.  Although consideration of an improper aggravating factor in sentencing does not always require remandment, resentencing is required where the appellate court is unable to determine the weight given to the improper factor.  
People v. Joe
, 207 Ill. App. 3d 1079, 566 N.E.2d 801 
(1991).

It is improper for a trial judge to consider as an aggravating factor that he believed that a witness testified falsely on the defendant's behalf.  A defendant has a constitutional right to present witnesses in his defense.  It is improper for a sentencing judge to impose a harsher sentence because the defendant exercises that right.  
People v. McPhee
, 256 Ill. App. 3d 102, 628 N.E.2d 523 
(1993).

In the present case, the trial judge stated during the sentencing hearing that he believed Waithe had testified falsely on the defendant's behalf.  The judge said that he was considering that the defendant had presented Waithe as a witness to the jury.  These were improper factors for the judge to consider in imposing the defendant's sentence.  Therefore, the trial judge abused his discretion in sentencing the defendant.

At the hearing on the defendant's motion to reconsider sentence, the judge stated that the defendant's sentence was appropriate even considering the factors the defendant raised in his postsentencing motion.  However, we cannot determine the weight the judge gave to the improper factor that Waithe may have offered perjured testimony as compared with other aggravating factors.  Therefore, we must vacate the defendant's sentence and remand for resentencing.  Further, 
in order to remove any suggestion of unfairness, this case should be assigned to a

different judge on remand.

CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction for armed robbery, but vacate his sentence and remand the matter to the Peoria County circuit court for resentencing before a different judge.

Affirmed in part and vacated in part; cause remanded.

SLATER and MCDADE, JJ., concurring.