# Illinois Official Reports

## Appellate Court

---

**People v. Tally, 2014 IL App (5th) 120349**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP C. TALLY, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-12-0349 |
| Filed | May 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated battery where the State filed a motion for pretrial discovery asking defendant for notice of any affirmative defenses he intended to raise almost two months before the scheduled bench trial and the trial court denied the request to assert the affirmative defense of self-defense defendant presented on the morning of his trial, his subsequent conviction was reversed and the cause was remanded for a new trial, since a continuance would have been an appropriate sanction in defendant's case, especially when defendant had waived a jury, the bench trial lasted only one day and only three citizen witnesses testified, the self-defense claim was material to defendant's guilt or innocence, and the State did not claim it would be prejudiced if a continuance were granted, furthermore, regardless of whether the record showed the original trial judge was biased, a new judge will be assigned to the case pursuant to defendant's unopposed request in order to remove any suggestion of unfairness. |
| Decision Under Review | Appeal from the Circuit Court of Marion County, No. 11-CF-308; the Hon. Michael D. McHaney, Judge, presiding. |
| Judgment | Conviction and sentence reversed; cause remanded with directions. |

Counsel on Appeal          Michael J. Pelletier, Ellen J. Curry, and Maggie A. Heim, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Matt Wilzbach, State's Attorney, of Salem (Patrick Delfino, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel          JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    On October 17, 2011, the State charged the defendant, Phillip C. Tally, with aggravated battery in violation of section 12-4(b)(1) of the Illinois Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12-4(b)(1) (West 2010)). The State filed a motion for pretrial discovery on April 27, 2012. The motion for pretrial discovery requested the defendant to give written notice of any affirmative defenses that he intended to assert at the trial. The defendant did not give notice of any affirmative defense until the day of his bench trial when he disclosed that he intended to raise self-defense as an affirmative defense. The circuit court barred the defendant's defense as a discovery sanction, and the defendant appeals his conviction following the bench trial. We reverse.

¶ 2                        BACKGROUND

¶ 3    On June 19, 2012, the parties appeared in court for a trial on the charge that the defendant committed aggravated battery by hitting the victim, Michael Grimes, in the head with a baseball bat. The defendant waived his right to a jury trial and filed an answer to discovery in which he alleged that he intended to assert the affirmative defense of use of force in defense of person pursuant to section 7-1 of the Criminal Code (720 ILCS 5/7-1 (West 2010)).

¶ 4    The defendant's attorney told the court that he was not ready to proceed with a bench trial that day because the defendant previously had decided not to proceed with a self-defense affirmative defense, but "that some new information [had] come to light very recently," and he now needed to assert a defense of use of force in defense of person. The defense attorney stated that this defense "came about" the night before and that his investigator had two witnesses who needed to be interviewed.

¶ 5    The State objected to the new affirmative defense and filed a motion *in limine* asking the court to prohibit the defendant or any of his witnesses from presenting evidence in support of

the affirmative defense of self-defense. The State noted in its motion that it had not received any notice of any affirmative defense in response to its pretrial discovery request. In support of the motion *in limine*, the prosecutor told the court that the State had not taken any steps to prepare for a rebuttal to any affirmative defense. The State requested the court to bar any evidence of the affirmative defense as a discovery sanction if the defendant insisted on having a trial that week.

¶ 6    The circuit court asked the defense to explain why the information concerning the affirmative defense "was not available before trial." The defense counsel stated that he did not want to get into the substance of his attorney/client conversations, but that his client told him some information for the first time the day before. Specifically, the defendant's attorney stated that his client told him that the victim had a bat with him at the time of the assault.

¶ 7    The court noted that it had been more than two months since the State had filed its motion for pretrial discovery and that the defense was presenting an affirmative defense "on the very morning of the trial." The court stated: "There has been nothing on this record disclosed to this Court as to why this information was not known to the defense long before the morning of the trial. This is an attempt at trial by ambush." The court granted the State's motion *in limine* and barred the defendant from presenting the affirmative defense of self-defense.

¶ 8    The defendant requested the court to continue the matter rather than bar his defense. The court denied the defendant's request for a continuance, noting the inconvenience on civilian witnesses. The court further stated:

> "The defendant cannot show up on the morning of trial and pop up with an affirmative defense that should have been disclosed weeks, if not months ago. He knew about the possibility of an affirmative defense, he was there, he knew if there was a baseball bat. This argument is totally without merit, and I'm exercising my discretion and I'm denying the motion to continue."

¶ 9    The court further stated that it was the defendant, not his attorney, who decided to assert the affirmative defense of self-defense at the last minute. The court then proceeded with the bench trial.

¶ 10   During the trial, the victim, Michael Grimes, testified that on October 15, 2011, his wife's sister, Sandy McPhail, had a party at her house for friends and family. He went to the party with his wife, stepdaughter, and two grandchildren. The defendant also attended the party. Grimes knew the defendant because the defendant was living with McPhail's daughter, Julie.

¶ 11   Grimes testified that during the course of the evening, the defendant started arguing with Grimes's wife, Rhonda, and that he and Julie "stepped in to break it up." At that point, the defendant and Grimes started arguing, and the defendant pushed him. Grimes fell over a bench, got up, and pushed the defendant. Grimes then got the defendant "in a front face lock, took him to the ground," and told him that he needed to go home. He let the defendant go and told him to leave because he had been drinking. The defendant got up and left the party.

¶ 12   About an hour and a half later, the defendant returned to the party carrying an aluminum baseball bat. Grimes testified that he and his wife were sitting in the back by a fire. The defendant walked straight at him and yelled at him. Grimes's wife stepped in between them

and yelled at the defendant. Grimes moved his wife out of the way, and the defendant hit him in the back of the head with the bat. The blow dazed him, and he fell over on his right side. When he got up, the defendant was leaving. The blow left a two-inch laceration on his scalp.

¶ 13    During cross-examination, the defendant's attorney asked Grimes if there were any bats located in the area, and Grimes stated that he assumed so because there were kids there, but he did not know where the bats were. When the defendant's attorney asked Grimes if he had a bat, the court sustained the State's objection on the basis that the question violated the court's ruling on its motion *in limine*.

¶ 14    Grimes's stepdaughter, Amber Holzhauer, testified that she was at the party and knew the defendant because he dated her cousin Julie. She testified that when the first fight between the defendant and Grimes occurred, she went inside the house and called 9-1-1. She called 9-1-1 a second time when the defendant came back with a bat. She was outside when the defendant returned to the party with the bat. She said the defendant looked mad. She took the kids inside the house, came back outside, heard the bat make contact with Grimes's head, and saw Grimes fall to the ground. When she called 9-1-1 the second time, she gave the police the license plate number of the vehicle that brought the defendant back to the party.

¶ 15    Joshua Dekalb testified that he was at the party and that he met the defendant for the first time at the party. Dekalb knew Grimes prior to the party. He testified that there was an altercation at the party in which the defendant pushed Grimes and knocked him over, and Grimes got up and retaliated. Grimes put the defendant in a headlock. Dekalb testified that he and one of his friends intervened and got Grimes to let the defendant go. When Grimes let the defendant go, he walked away.

¶ 16    Dekalb testified that the defendant returned approximately 30 minutes later carrying a silver baseball bat and looking for someone. The defendant was yelling, "where is he at, where is he at." Dekalb saw the defendant approach Grimes, they exchanged words, and the defendant hit Grimes in the head with the baseball bat. He saw Grimes's wife step in between them, but Grimes moved her out of the way just before the defendant hit him in the head with the bat. Grimes fell to the ground, and the defendant left carrying the bat.

¶ 17    The officers who arrested the defendant on the night of the fight testified that they made a traffic stop of a vehicle based on a description of the vehicle and license plate number given to them by their dispatcher. The defendant rode in the backseat of the vehicle. The officers also removed a silver aluminum bat from the back seat of the vehicle, but neglected to take the bat into evidence when they arrested the defendant.

¶ 18    The State introduced a recording of statements the defendant gave to police officers after he was arrested. The defendant described drinking and fighting that had been going on at the party and said that Grimes held him down while two other men beat him. He said that he left the party in his girlfriend's car and returned because his girlfriend had called about her car. He told the officers that he returned with a baseball bat and admitted to swinging it at Grimes and hitting him in the head when he reached for a bat.

¶ 19    At the conclusion of the State's case in chief, the defendant's attorney made an offer of proof concerning the defendant's testimony with respect to self-defense. The attorney stated

that the defendant would have testified that the second altercation between him and Grimes took place in an area where there was wood and that Grimes had a piece of wood and a bat in his hands when he returned to the party. The defendant would testify that "there was a swing at him and he swung back and then clipped Mr. Grimes in the head." The attorney explained, "That would be essentially our testimony with respect to the proffer defense of self-defense would be the presence of another bat in Mr. Grimes'[s] hand at or near the time of the incident which resulted in Mr. Grimes'[s] injury."

¶ 20    The defendant testified that the initial fight occurred when Grimes put him in a headlock and two other people started hitting him on the side of his head. When he was finally let up, he took off running, got into his girlfriend's car, and headed home. At his house, his nephew came outside and asked what happened, and he told him that he was jumped by three people at the party and that his girlfriend had called and wanted him to bring her car back. He testified that he got the baseball bat for safety and that his nephew drove him back to the party so he could give his girlfriend her keys.

¶ 21    When he arrived back at the party, he walked up the driveway with the bat. He approached Grimes and asked, "What was that for?" He also asked where the rest of the guys were who had jumped him. The defendant began to testify that Grimes then made a sudden approach toward him while holding a piece of wood. At this point in his testimony, the court sustained the State's objection to this testimony as being in violation of the court's order granting the motion *in limine*. The defendant testified that he did not return to the party for retaliation and that he had never had a problem with Grimes.

¶ 22    At the conclusion of the trial, the circuit court found the defendant guilty of aggravated battery. The court subsequently sentenced the defendant to 10 years in the Illinois Department of Corrections. The defendant now appeals his conviction and sentence, arguing that the circuit court abused its discretion in completely barring his affirmative defense of self-defense as a discovery sanction.

¶ 23                                                    DISCUSSION

¶ 24    Illinois Supreme Court Rules require a defendant to disclose to the State any defenses that he intends to present at trial. Specifically, Illinois Supreme Court Rule 413(d) provides, "Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial ***." Ill. S. Ct. R. 413(d) (eff. July 1, 1982).

¶ 25    The rules also provide the trial court with authority to impose sanctions against a defendant who fails to disclose his affirmative defenses. Specifically, Illinois Supreme Court Rule 415(g)(i) provides:

        "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such

evidence, or enter such other order as it deems just under the circumstances." Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971).

¶ 26 We review a trial court's imposition of a discovery sanction under the abuse of discretion standard. *People v. Ramsey*, 239 Ill. 2d 342, 429, 942 N.E.2d 1168, 1216 (2010). "An abuse of discretion exists only where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *Id.*

¶ 27 The purpose of the discovery rules "is to prevent surprise or unfair advantage and to aid in the search for the truth." *People v. Daniels*, 75 Ill. App. 3d 35, 41, 393 N.E.2d 667, 673 (1979). The purpose of sanctions is to further the purpose of discovery rules, not to punish the offending party. *People v. Scott*, 339 Ill. App. 3d 565, 572, 791 N.E.2d 89, 94 (2003). The determination of the appropriate sanction depends on the circumstances of each particular case, and the sanction should not encroach on a party's right to a fair trial. *Id.* at 572, 791 N.E.2d at 94-95.

¶ 28 Prohibiting a criminal defendant from presenting testimony or evidence as a discovery sanction is a disfavored sanction because it does not further the goal of truth-seeking. *Id.* at 572, 791 N.E.2d at 95. It is appropriate in only the most extreme situations and will be closely scrutinized on appeal. *Id.* at 573, 791 N.E.2d at 95. In *People v. Rayford*, 43 Ill. App. 3d 283, 286-87, 356 N.E.2d 1274, 1277 (1976), the court noted that the exclusion of evidence is a "drastic measure" and in civil cases, the sanction is limited to flagrant violations. With respect to discovery sanctions in criminal cases, the court explained that "[t]he reasons for restricting the use of the exclusion sanction to only the most extreme situations are even more compelling in the case of criminal defendants, where due process requires that a defendant be permitted to offer testimony of witnesses in his defense." *Id.* at 286, 356 N.E.2d at 1277.

¶ 29 The factors that the trial court should consider when considering the exclusion of evidence as a discovery sanction are (1) the effectiveness of a less severe sanction, (2) the materiality of the witness's proposed testimony to the outcome of the case, (3) the prejudice to the other party caused by the testimony, and (4) evidence of bad faith in the violation of discovery rules. *People v. White*, 257 Ill. App. 3d 405, 414, 628 N.E.2d 1102, 1109 (1993). In evaluating whether the circuit court abused its discretion, we will "consider these factors in the context of the factual circumstances of [the] case." *Scott*, 339 Ill. App. 3d at 573, 791 N.E.2d at 95. In the present case, we believe that the trial court abused its discretion in imposing the harshest sanction for a discovery violation, exclusion of the defendant's affirmative defense.

¶ 30 First, in analyzing the factors the court is to consider when imposing exclusion of evidence as a discovery sanction, the first factor we must consider is the effectiveness of a less severe sanction. A less drastic measure includes a continuance when appropriate. Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971). A continuance in the present case would have allowed the State to prepare to respond to the defendant's claim of self-defense. The State objected to the defendant presenting evidence of self-defense only if he insisted on proceeding to trial that week. The defendant requested a continuance and agreed that any delay would be attributable to him for purposes of the speedy trial statute. Had the trial court granted the continuance, the remedy "would have effectively cured any prejudice [the State] suffered as a result of the discovery violation." *Scott*, 339 Ill. App. 3d at 574, 791 N.E.2d at 96. The continuance would have

caused little inconvenience because the defendant had waived his right to a jury trial. The trial itself was a one-day bench trial during which only three citizen/non-law-enforcement witnesses testified. The truth-seeking function of our adversarial system of criminal justice outweighs this minor inconvenience. The first factor we consider, therefore, weighs heavily against barring the defendant from presenting any affirmative defense.

¶ 31 The second factor requires us to consider the materiality of the proposed evidence. The defendant was charged with aggravated battery as a result of hitting Grimes in the head with a baseball bat. Evidence that the defendant hit Grimes in self-defense was material to his guilt or innocence. He denied committing any crime, but instead asserted that he acted in self-defense. The court, however, denied the defendant the opportunity to present any evidence of his defense. "It is a fundamental right of a defendant to present his theory of the case, no matter how overblown or specious it might appear." *People v. Osborne*, 114 Ill. App. 3d 433, 437, 451 N.E.2d 1, 3 (1983). The circuit court's complete exclusion of the defense was an extreme sanction. *People v. Brooks*, 277 Ill. App. 3d 392, 398, 660 N.E.2d 270, 274 (1996). The prejudice to the defendant in excluding the defense was substantial. *People v. Williams*, 55 Ill. App. 3d 752, 757-58, 370 N.E.2d 1261, 1265 (1977) ("The exclusion of all the defense witnesses effectively deprived defendant of an opportunity to present a defense.").

¶ 32 The third factor concerns the prejudice caused to the State by the undisclosed affirmative defense. As noted above, prior to the bench trial, the State maintained that it had not had an opportunity to prepare a rebuttal to a claim of self-defense. The prosecutor told the court that the State would be prejudiced by the defendant's failure to comply with pretrial discovery, but only if the defendant insisted on going to trial that week. The State did not claim any prejudice if the court were to grant a continuance.

¶ 33 The final factor that we must consider involves evidence of bad faith in the violation of the discovery rules. The circuit court found bad faith on the part of the defendant, not his counsel, by raising the affirmative defense for the first time when the bench trial was scheduled to begin. The circuit court believed that the defendant was gaming the court system and attempting a trial by ambush. In support of the circuit court's severe sanction of exclusion of evidence of self-defense, the State cites *Taylor v. Illinois*, 484 U.S. 400 (1988).

¶ 34 In *Taylor*, the circuit court refused to allow a witness to testify at the defendant's trial due to the defense attorney's failure to identify the witness in pretrial discovery. The United States Supreme Court held that the sanction did not violate the sixth amendment's compulsory process clause. *Id*. at 401-02. In that case, the defendant was convicted of attempted murder during a street fight. Witnesses testified that the defendant and others beat the victim with pipes and clubs and that the defendant shot the victim in the back as he attempted to flee. Witnesses testified that the defendant attempted to shoot the victim in the head when the victim fell to the ground, but the gun misfired. *Id*. at 402. For his defense, the defendant presented two witnesses who testified that the victim's brother, not the defendant, possessed the firearm and shot the victim by mistake when he fired into the group. *Id*. at 402-03.

¶ 35 On the first day of the trial, the defendant's attorney amended his answer to his pretrial discovery response to add another witness and a police officer to his list of witnesses. *Id*. at 403. On the second day of the trial, after the State's two principal witnesses had completed

their testimony, the defendant's counsel moved to amend the pretrial discovery answer to include two more witnesses. He told the court that he had just been informed about them and that they had probably seen the entire incident. *Id*. at 404. In response to the court's inquiry, the defense counsel stated that the defendant had told him about one of the witnesses earlier, but that he had been unable to locate that witness. *Id*. The circuit court noted that the witnesses' names could have been disclosed earlier, but directed the defendant's counsel to bring the witnesses in the next day, and it would decide whether they could testify. *Id*.

¶ 36　　On the third day of the trial, one of the witnesses appeared in court with the defendant's attorney. During *voir dire* examination of the witness, the witness described events that occurred prior to the fight. He saw that the victim and his brother were armed with weapons, and they told the witness that they were after the defendant. The witness explained that when he ran into the defendant a short time later, he told him to " 'watch out because they got weapons.' " *Id.* at 404-05. The witness also testified that he had spoken with the defendant's attorney a week before the trial began. *Id*. at 405. The witness, therefore, contradicted the attorney's statement to the court that he had been previously unable to locate the witness. After hearing the offer of proof, the circuit court determined that the proper discovery sanction was exclusion of the witness's testimony. *Id*. The court found that the defendant's attorney's violation of the discovery rules was blatant and willful. *Id*.

¶ 37　　The Supreme Court in *Taylor* considered, among other issues, whether the circuit court's exclusion of the witness's testimony violated the sixth amendment under the facts of that case. *Id*. at 406. The defendant argued that the preclusion sanction was too harsh because the *voir dire* examination adequately protected the State from any possible prejudice resulting from surprise and because it was unfair to punish him for his lawyer's misconduct. *Id*. at 416. In rejecting the defendant's argument, the Court found it significant that the violation was willful and blatant and was a deliberate attempt to obtain a tactical advantage. *Id*. at 417. The Court was concerned with "the impact of this kind of conduct on the integrity of the judicial process itself." *Id*. at 416. The Court also noted that, in Illinois, "the sanction of preclusion is reserved for only the most extreme cases." *Id*. at 417 n.23.

¶ 38　　We believe *Taylor* is distinguishable because the facts of the present case do not present extreme circumstances that warrant the exclusion of the defendant's entire affirmative defense as a discovery sanction. The defendant's right to present a defense outweighs any prejudice to the State when a continuance would cure the prejudice. In addition, the last-minute disclosure of the self-defense affirmative defense cannot be viewed as an attempt at trial by ambush or an attempt to gain a tactical advantage when, unlike *Taylor*, the defendant revealed the affirmative defense before the trial began, requested a continuance as an alternative to exclusion of the defense as a sanction, and agreed that the delay was attributable to him for speedy trial purposes. "[R]ecess and continuance are to be thoughtfully considered and preferred to exclusion as a sanction." *People v. Flores*, 168 Ill. App. 3d 284, 293, 522 N.E.2d 708, 714 (1988). The record does not reveal any previous requests for continuances by the defendant, any misrepresentations made to the court as was the case in *Taylor*, or any other willful or blatant conduct that would warrant the severest sanction possible. See *Scott*, 339 Ill.

App. 3d at 576-77, 791 N.E.2d at 98 (distinguishing *Taylor*). The discovery violation in the present case did not rise to the same level as that in *Taylor*.

¶ 39 Under the facts of this case, excluding the defendant from presenting any evidence that he acted in self-defense does not further the integrity of the adversary process but, instead, hinders the integrity of our adversarial system of justice by preventing a full presentation of all relevant facts. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor*, 484 U.S. at 408. Our criminal justice system is based on an adversary system, and the integrity of and public confidence in this system depends on a complete presentation of all relevant facts before a court of law. *United States v. Nixon*, 418 U.S. 683, 709 (1974). Sanctions other than preclusion are " 'adequate and appropriate in most cases.' " *Michigan v. Lucas*, 500 U.S. 145, 152 (1991) (quoting *Taylor*, 484 U.S. at 413).

¶ 40 In the present case, it is apparent from the evidence presented at the bench trial that the defendant's entire defense would have been based on a claim of self-defense. The circuit court's discovery sanction, however, precluded the defendant from presenting any evidence of self-defense. The sanction, therefore, effectively denied the defendant the opportunity to present any defense. The sanction imposed by the trial court did not promote the goal of truth-seeking, was too severe under the facts and circumstances, and produced an unacceptable degree of unfairness that constitutes reversible error. *People v. Jackson*, 48 Ill. App. 3d 769, 772, 363 N.E.2d 392, 394 (1977). Accordingly, we reverse the defendant's conviction and sentence and remand for a new trial.

¶ 41 Our resolution of this issue makes it unnecessary for us to address the defendant's remaining contentions of ineffective assistance of counsel and improper sentencing credit.

¶ 42 Finally, the defendant argues that we should direct that the case be remanded for proceedings in front of a different judge. The defendant argues that the trial judge is biased and lacks impartiality. The defendant argues that the judge's bias is demonstrated by his "draconian rulings" and in determining the defendant's claim of self-defense was "ridiculous" without proper factual development.

¶ 43 Supreme Court Rule 366(a)(5) permits a reviewing court, in its discretion, to make any order or grant any relief that a particular case may require. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). "This authority includes the power to reassign a matter to a new judge on remand." *Eychaner v. Gross*, 202 Ill. 2d 228, 279, 779 N.E.2d 1115, 1146 (2002).

¶ 44 The trial judge's rulings with respect to discovery sanctions are not a basis for establishing a bias against the defendant. Erroneous rulings by the trial court "are insufficient reasons to believe that the court has a personal bias for or against a litigant." *Id.* at 280, 779 N.E.2d at 1146. In addition, adverse rulings by a trial judge in a prior case do not ordinarily disqualify that judge from sitting in a subsequent case. *People v. Vance*, 76 Ill. 2d 171, 178, 390 N.E.2d 867, 870 (1979). We also note that the trial court judge's use of the term "ridiculous" in the present case appears to be directed at the defendant's failure to offer an explanation concerning why he did not "pursue" his self-defense affirmative defense prior to the day of the trial, not directed at the merits of the defense.

¶ 45      However, regardless of whether the record demonstrates the trial judge's bias, in its brief on appeal, the State does not answer the defendant's request that the case be assigned to a new judge. Accordingly, we grant the defendant's unopposed request and order that the case be reassigned to a different judge upon remand. We also note that a reassignment to a new judge removes any suggestion of unfairness to the extent that any uncertainty in the record concerning the trial judge's use of the term "ridiculous" can be interpreted as a showing of bias or lack of impartiality. *People v. McAfee*, 332 Ill. App. 3d 1091, 1097, 774 N.E.2d 469, 473 (2002) (upon remand for resentencing, the court ordered the case reassigned to a different judge "in order to remove any suggestion of unfairness").

¶ 46                                  CONCLUSION
¶ 47      For the foregoing reasons, we reverse the defendant's conviction and sentence and remand for a new trial, and we direct the circuit court to designate a new judge for further proceedings.

¶ 48      Conviction and sentence reversed; cause remanded with directions.