**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230033-U

Order filed August 14, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0033 Circuit No. 21-CM-1759 |
| THOMAS M. WALSH, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

**ORDER**

¶ 1      *Held*:    (1) The evidence was sufficient to disprove defendant's affirmative defense.
                 (2) The circuit court did not improperly increase defendant's sentence.

¶ 2      Defendant, Thomas M. Walsh, appeals his conviction for battery arguing that the State failed to disprove his affirmative defense of use of force to protect property. Further, defendant asserts that the Du Page County circuit court improperly increased his sentence after hearing his statement in allocution which proclaimed his innocence. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4          On June 22, 2022, defendant was charged by superseding information with four counts of battery, alleging defendant grabbed Paige Donahue's arms and hair (720 ILCS 5/12-3(a)(1), (2) (West 2020)). On September 28, 2022, defendant filed notice that he intended to "assert the Affirmative Defense of Use of Force in Defense of Other Property, pursuant to 720 ILCS 5/7-3." The case proceeded to a bench trial.

¶ 5          At trial, Donahue testified that on December 17, 2021, she was in the passenger seat of defendant's vehicle. While driving, Donahue said to defendant "You technically raped me last night" which "triggered" defendant causing him to pull off the road into a parking lot. Donahue testified that defendant took her cell phone. She attempted to retrieve it from him, but defendant exited the vehicle. Donahue sat in the passenger seat with her feet outside the open door. Defendant came around the vehicle, removed Donahue's bag from the backseat, and approached her. Defendant grabbed Donahue's shoulders and shook her violently. Donahue's head struck the top of the vehicle several times. Her vision became blurry, and she felt like she was going to have a seizure. Donahue was "scared and petrified."

¶ 6          Donahue explained that she suffered from both epileptic seizures and stress induced seizures. She testified that she did not know whether she experienced a seizure during the incident with defendant but did suffer two seizures after returning home. Donahue explained that she does not remember anything during her seizures but afterwards, she feels unsteady and fatigued.

¶ 7          On cross-examination, Donahue stated that she met defendant for the first time the night before the incident. Defendant had picked her up in Wheaton and drove her to his apartment in Chicago. Donahue indicated that on December 17, 2021, defendant "obviously wanted [her] to

2

get out of the car. He *** tried to drag [her] out of the car, like, shaking [her] and dragging [her]." She testified that defendant did not ask her to exit the vehicle, explaining that "[i]f he would have asked [her], it would be a different story[.]" Donahue indicated that defendant removed her bag from the vehicle and "came right at [her] afterwards." Donahue did not notice that he had removed her bag until the ambulance arrived. Donahue did not remember speaking with the initial officer on the scene. She was in shock and only remembered sitting by the officers and crying. When the paramedics arrived, she declined medical treatment. Donahue indicated that she told them she would seek medical attention the next day because she was too exhausted at that time. Donahue expressed confusion at various points throughout her testimony, which she indicated came from her inexperience with court proceedings and another open case against defendant.

¶ 8        Wheaton Community Service Officer Neil Waldschmidt testified that on December 17, 2021, he was on patrol and observed what he initially believed to be a traffic crash. He approached to offer his assistance and observed defendant involved in a physical altercation with Donahue in his passenger seat. Waldschmidt indicated that defendant appeared to be attempting to remove her from the vehicle. Defendant was pulling Donahue by one arm and she appeared to be struggling to remain in the vehicle. The altercation lasted approximately 15 to 20 seconds. Waldschmidt indicated that as he approached, defendant was irate and screaming that he wanted Donahue out of the vehicle. Donahue was crying, saying that defendant had pulled her hair. Waldschmidt asked defendant several times to stay away from the vehicle. Defendant did not obey Waldschmidt's commands "until, at one point, he went to the driver's side of the vehicle and retrieved something from under the seat and walked away." Waldschmidt observed no visible injuries to Donahue, or any hair missing from her head.

¶ 9        Wheaton Police Officer James Gutierrez testified that on December 17, 2021, he was dispatched to investigate a report of a man forcibly removing a woman from a vehicle. When Gutierrez arrived, defendant had been detained by other officers. Gutierrez spoke with Donahue. He did not observe any visible signs of injury and indicated that she refused medical treatment. After completing his investigation on the scene, Gutierrez arrested defendant for battery. At the police station, Gutierrez interviewed defendant. A portion of the video recorded interview was admitted and played for the court. In the recording, defendant explained his version of events. Defendant indicated that Donahue

> "rolled the window down *** when I pulled over to tell her to get out. She told somebody else I raped her, and I said get out of here, you know. So, then I went to grab her and then she fell back, *** she was in her seat *** and then that's what ripped her shirt ***."

Defendant further explained that after Donahue began lying about being sexually assaulted, he told her that he would be taking her home. She refused to provide him with an address, so he told her to exit the vehicle. Donahue then informed defendant she would be calling the police. At that point, defendant took Donahue's cell phone.

¶ 10        The State also admitted a surveillance video from the parking lot where the incident occurred. The video depicted defendant's vehicle sitting in the parking lot. Defendant exited the vehicle, and Donahue opened the passenger door and turned sideways, sitting with her feet on the ground. Defendant came around the vehicle, opened the rear passenger door, and removed a blue bag. He set it on the ground, leaving the door open. Defendant then turned and approached the driver of a nearby white van. Defendant returned to his vehicle, shut the rear passenger door, and immediately approached Donahue. He reached for her, and a physical altercation ensued.

4

Waldschmidt can be seen approaching from the street. Defendant disengaged from Donahue and walked around to the driver's side of the vehicle. He appeared to retrieve something from the vehicle and walked toward the building. Donahue stayed in the passenger seat until police arrived. Upon their arrival, she exited defendant's vehicle and approached the officers. Donahue appeared to be agitated and, after a period, collapsed to the ground.

¶ 11 The court found defendant guilty of committing a battery of an insulting and provoking nature against Donahue by grabbing her about the arms. Defendant was acquitted of the three remaining charges. In so finding, the court explained that defendant "can protect his own property, but he has to use that amount of force which he believes is reasonably necessary to protect the property." The court indicated that in addition to the testimony of Donahue and a direct witness to the events, Waldschmidt, what it saw during its review of the surveillance video was defendant "get out of the car, go to the back door, throw her bag on the ground, open up the door and it looked like he was then just struggling to pull her out of the car."

¶ 12 The court further found that the use of force was not necessary because there was no immediate need with no threat of destruction or damage. Further, the court did not see any evidence that defendant told Donahue to exit the vehicle, stating: "I didn't see anything that looked like any sort of conversation. It looked like it went from zero to 100 without any sort of stopping for dialogue."

¶ 13 The case proceeded to immediate sentencing. The State requested one year of probation, 10 days in jail, and anger management classes. It disclosed that defendant had minimal criminal history with only two prior court supervision dispositions for driving under the influence of alcohol in 2011 and domestic battery in 2001. Defense counsel argued for a term of court

supervision with a no contact provision and anger management classes. Defendant made the following statement in allocution:

> "You know, I had a dash camera that had every bit of evidence; and the cop said \*\*\* it was going to be there; and, sure enough, it wasn't there. And it had all the video and everything you need to know, and somehow you guys come out with some other angle. The court system is a farce. You know what I mean? I put my arm through a window after the first incident I had because this girl blew up naked pictures of me. You know, and the same incident, right, 20 years later she said I raped her. I didn't rape her. Like, if someone says that about you, you're going to be happy with that and say, Let me drive you around to no address. Nobody is. But, I mean, understand—I did—You know, because I had no thought going on; and then it just brought me back to 20 years ago. And then, all the while, my pain is through the roof. I put my arm through a window and it's never going to go away. So whatever you said, I was shaking her with both of my hands, this one hand doesn't even move. So when she—She grabbed with me. She came up and then she sat down and pulled me back down. That, to me, that was a little more than—I didn't do anything harsh to her. She did more to me than I did to her on that sit-down."

The court pronounced its sentence, stating:

> "All right, sir. Well, unfortunately, [defense counsel] had convinced me that you were a good candidate for court supervision. You have convinced me otherwise. You haven't said anything about the victim. You haven't shown one iota of remorse. It's all about you and how you've been mistreated by the system,

6

by the victim, by the police, no one here has been victimized more than you. That does not show a person who is likely to succeed on a term of court supervision. [Defense counsel] had it for you. Congratulations, sir. Your attitude in the courtroom is depriving you of court supervision."

The court sentenced defendant to one year of conditional discharge, no contact with Donahue, and anger management classes. Defendant appealed.

¶ 14                                    II. ANALYSIS

¶ 15          On appeal, defendant argues that the State failed to disprove his affirmative defense that he used force to defend his property from Donahue's trespass. Further, defendant contends that the court improperly increased his sentence from court supervision to conditional discharge after hearing his statement in allocution in which he proclaimed his innocence.

¶ 16                               A. Affirmative Defense

¶ 17          When a defendant presents evidence supporting the affirmative defense of property, "the State [is] required to disprove the affirmative defense[s] in addition to proving the elements of the charged offense." *People v. Bausch*, 2019 IL App (3d) 170001, ¶ 22. "The relevant standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that defendant did not act" in defense of property. *People v. Lee*, 213 Ill. 2d 218, 225 (2004). In relevant part, "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with *** personal property, lawfully in his possession ***." 720 ILCS 5/7-3(a) (West 2022). The trier of fact is responsible for determining the credibility of the witnesses,

7

the weight to be afforded their testimony and any reasonable inferences to be drawn from the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 18 Here, the court heard all the evidence, including defendant's videotaped statements that he told Donahue to exit his vehicle. It found defendant guilty on only one of four counts of battery. It made that finding based on its review of the surveillance video where a physical interaction occurred, but no conversation appeared to take place between defendant and Donahue. It also considered the testimony of both Waldschmidt and Donahue. The court was able to observe the incident on the video and weigh the credibility of the witnesses. While defendant argues that Donahue was not credible, we defer to the court's credibility findings as they are not manifestly erroneous. See *People v. Ceja*, 204 Ill. 2d 332, 347 (2003).

¶ 19 The court found that the defense of property failed because there was no evidence that defendant's property was in any immediate danger or that Donahue had been told to exit the vehicle. Defendant argues that Donahue was trespassing. However, having been invited to ride in the vehicle, Donahue must have been given notice to exit the vehicle and a reasonable opportunity to depart before she can be said to be trespassing, which the court found did not happen. See *People v. Mims*, 8 Ill. App. 3d 32, 34-35 (1972) (defendant could not be convicted of criminal trespass where he was arrested immediately after being advised to leave without being given a reasonable opportunity to depart).

¶ 20 Defendant points out that, in his videotaped interview with police, he told them that he had asked Donahue to exit the vehicle. However, the court was under no obligation to accept the unsworn statements by defendant to the police as true. See *People v. Ferguson*, 204 Ill. App. 3d 146, 151 (1990) ("The trier of fact is not required to accept defendant's version of the facts, but may consider its probability or improbability in light of the surrounding circumstances."); *People*

8

*v. Schaefer*, 87 Ill. App. 3d 192, 194 (1980) (stating the trier of fact is not required to "accept a defendant's exculpatory statement as true even in the absence of directly contradicting evidence by other witnesses"). This is especially the case where Donahue testified that defendant did not tell her to exit the vehicle, which the court believed. Accordingly, sufficient evidence was presented by the State to justify the court's finding that the use of force was unnecessary.

¶ 21                                    B. Sentencing

¶ 22        Defendant next argues that because the court believed court supervision was an appropriate sentence prior to hearing defendant's statement in allocution, it improperly increased defendant's sentence after hearing his claims of innocence. Defendant acknowledges that he forfeited this issue and requests that we review his unpreserved claim under the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The first step of the plain error analysis is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 23        "In determining the appropriate sentence, the trial judge must consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding." *People v. Ward*, 113 Ill. 2d 516, 527 (1986). Absent an abuse of discretion, a court's sentencing decision will not be reversed. *People v. Bush*, 2022 IL App (3d) 190283, ¶ 118. "Consideration of an improper factor in aggravation affects a defendant's fundamental right to liberty, and therefore, is an abuse of discretion." *People v. McAfee*, 332 Ill. App. 3d 1091, 1096 (2002). A court may not impose a more severe sentence merely because a defendant maintains his claim of innocence. *People v. Donlow*, 2020 IL App (4th) 170374, ¶ 84. However, a court may consider a defendant's lack of remorse when

9

fashioning an appropriate sentence because it may have a bearing on defendant's potential for rehabilitation. *People v. Coleman*, 135 Ill. App. 3d 186, 188 (1985); see *Ward*, 113 Ill. 2d at 529 (explaining that relevant evidence of defendant's potential for rehabilitation may be conveyed through his "continued protestation of innocence and his lack of remorse"). Nonetheless, protestations of innocence and lack of remorse "must not be automatically and arbitrarily applied as aggravating factors." *Id.*

¶ 24        Here, the court did explicitly state that prior to defendant's statements it believed he was a good candidate for court supervision, however, after receiving evidence of defendant's lack of remorse and attitude toward the court system, the court determined that defendant was unlikely to successfully complete a term of court supervision. The court made no mention of defendant's claims of innocence. It properly considered defendant's statements in determining his rehabilitative potential and ability to successfully complete court supervision. See *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 29 (courts can consider lack of remorse as indicative of defendant's character and prospects for rehabilitation). Thus, the court did not err in sentencing defendant.

¶ 25                                    III. CONCLUSION

¶ 26        The judgment of the circuit court of Du Page County is affirmed.

¶ 27        Affirmed.